In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-2112

JACKMAN FINANCIAL CORP.,

*Plaintiff-Appellant*,

*v.*

HUMANA INSURANCE CO.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:08-cv-05784—**Charles R. Norgle**, *Judge.*

ARGUED MARCH 29, 2011—DECIDED MAY 31, 2011

Before ROVNER, WILLIAMS, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* When Kunta Torrence was killed in a car accident, he held a life insurance policy through his employer that named his brother as the sole beneficiary. His brother was also in the same car and died at the same time as Torrence. A "facility-of-payment" clause in Torrence's group life insurance plan allowed the insurer, if the named beneficiary was not living, to choose a substitute beneficiary from

among a list of relatives and the deceased's estate. The insurer did so, choosing to pay Torrence's children. Long before the insurer had done so, however, the future administrator of Torrence's estate (his mother) separately executed an assignment of the same life insurance proceeds to a financing company that had funded Torrence's funeral. The assignee, plaintiff Jackman Financial Corporation, brought this ERISA case against the insurer to recover the proceeds from the life insurance policy. The district court granted summary judgment to the insurer, defendant Humana Insurance Company, concluding that the insurer properly exercised its right under the policy by selecting a substitute beneficiary under the facility-of-payment clause. We agree with that reasoning and affirm.

I.  *Facts and Procedural Background*

As an employee of a North Carolina company, Kunta Torrence participated in an employee life insurance and welfare benefits plan administered by defendant-appellee Humana Insurance. Torrence's group life insurance plan provided that, in the event of his death, $15,000 would be paid to his named beneficiary. Torrence chose his brother Adair to be the sole beneficiary. The group plan also included a "facility-of-payment" clause, which provided:

> if the beneficiary he or she named is not alive at the Employee's death, the payment will be made at Our option, to any one or more of the following:

- Your spouse;

- Your children;

- Your parents;

- Your brothers and sisters; or

- Your estate.

In general, a facility-of-payment clause provides for "payment to a named beneficiary or to a member of a named class or, in the alternative, to any person found by the insurer to be equitably entitled." *Forcier v. Metropolitan Life Ins. Co.*, 469 F.3d 178, 184 (1st Cir. 2006), quoting 4 Couch on Insurance 3d § 61:14 (2005). See also 2A John Alan Appleman & Jean Appleman, Insurance Law & Practice § 1163 (1966) ("facility of payment clauses give the insurer the option of paying to any person possessing the qualifications set forth in the clause"); 166 A.L.R. 10 (1947) (facility-of-payment clause creates "an appointment, by the parties to an insurance contract, of persons or classes of persons who may receive payment of the benefits or proceeds accruing under the contract").

Torrence and the named beneficiary were killed simultaneously in a car crash on April 1, 2007. On April 11th, their mother Nancy Kelly executed a contract assigning $10,664.93 of Torrence's life insurance policy proceeds to plaintiff-appellant Jackman Financial, a finance company that advances funds for funeral expenses, as security for Jackman Financial's loan to pay for Torrence's funeral. The assignment stated:

the undersigned [Kelly] hereby irrevocably assigns and transfers over to Jackman Financial Corp. the sum of $10,664.93, or so much thereof as is available from the proceeds of the following policies: #s Group number 617912 ID # 002939350 of the Humana IN-SURANCE COMPANY which may be or is due to the undersigned as beneficiary or by reason of any other qualification.

On April 13th, two days after Kelly signed the assignment to Jackman Financial, a North Carolina court appointed Kelly administrator of Torrence's estate. That same day, Kelly signed a Humana Beneficiary Form identifying herself, "Nancy T. Kelly—Administrator of Estate," as the beneficiary of Torrence's plan. Later that month, Jackman Financial paid the funeral home and sent Humana a request for payment from Torrence's life insurance policy proceeds, attaching the assignment from Kelly and the form Kelly signed claiming to be the plan beneficiary.

On May 3, 2007, Humana sent a letter to Kelly explaining that Torrence's group plan included a facility-of-payment clause and stating that the company required additional information from Kelly "to determine benefit payment." Humana acknowledged having received a copy of the assignment from Jackman Financial, as well as the Beneficiary Form signed by Kelly. The letter, quoting from the plan, noted that Humana would "rely upon an affidavit to determine benefit payment, unless We receive written notice of valid claim before payment is made." Humana requested that a

member of Torrence's family complete its enclosed form affidavit.

Three months later, after Humana issued a second notice to Kelly with the same request for an affidavit, Kelly completed the affidavit and identified Torrence's living relatives. On August 31, 2007, Humana sent Kelly a letter acknowledging receipt of her affidavit. The letter included the following language:

> Our records indicate that the listed beneficiaries for any available life insurance proceeds are [redacted children's names,] minor children. Please note we are unable to issue life insurance proceeds to a minor. We require guardianship papers from the probate court . . . .

Humana delivered Kelly a second identical notice in November 2007.

In early December 2007, the Superior Court of Rowan County, North Carolina, issued an order authorizing Humana to "deliver all funds due" to Torrence's minor children to the care of the court. On December 28, 2007, Humana communicated to Kelly that it had completed its review and issued checks totaling $16,053.29 to the clerk of the superior court for the benefit of Torrence's children.

Jackman Financial filed suit in an Illinois state court in September 2008 to recover the amount it had advanced for Torrence's funeral costs. Humana removed the case to the federal district court, asserting that the claims necessarily arose under the Employee Retirement Income

Security Act of 1974 (ERISA). Jackman Financial then amended its complaint by deleting its state law claims and adding a single claim for denial of benefits under ERISA. When a purported assignee of a plan beneficiary brings a colorable claim for plan benefits under 29 U.S.C. § 1132(a)(1)(B), a federal district court has subject matter jurisdiction under ERISA. See, *e.g.*, *Kennedy v. Connecticut General Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir. 1991). The district court granted Humana's motion for summary judgment and denied Jackman Financial's motion for reconsideration. Jackman Financial has appealed.

II. *Discussion*

A. *Humana's Decision to Pay the Children*

We review de novo a district court's grant of summary judgment and denial of a cross-motion for summary judgment. See *Prate Installations, Inc. v. Chicago Regional Council of Carpenters*, 607 F.3d 467, 470 (7th Cir. 2010). Under 29 U.S.C. § 1132(a)(1)(B), federal courts also review de novo an ERISA plan administrator's denial of benefits unless the plan gives the administrator discretionary authority to determine eligibility for benefits. See *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Because the group plan here gave Humana discretionary authority to administer it, we instead evaluate whether Humana's decision to deny benefits to Jackman Financial was arbitrary and capricious. See *Marrs v. Motorola, Inc.*, 577 F.3d 783, 786 (7th Cir. 2009).

Under the arbitrary and capricious standard, we overturn the administrator's decision only where there is an

absence of reasoning to support it. See *Hess v. Reg-Ellen Machine Tool Corp.*, 423 F.3d 653, 658 (7th Cir. 2005); *Tegtmeier v. Midwest Operating Engineers Pension Trust Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004). We apply the standard as an abuse of discretion standard. See *Holmstrom v. Metropolitan Life Ins. Co.*, 615 F.3d 758, 767 n.7 (7th Cir. 2010). Applying that standard here, we agree with the district court that Humana's decision to pay the proceeds of Torrence's life insurance plan to his children was not an abuse of its discretion. The facility-of-payment clause in Torrence's group plan provided Humana with the option of paying the life insurance proceeds to any of five named entities or groups if the named beneficiary had died. Humana did exactly that.

Plaintiff Jackman Financial argues that Kelly's assignment of the proceeds effectively entitled plaintiff to receive them and that Humana acted arbitrarily by ignoring the assignment. For plaintiff to acquire a right to the proceeds, however, Kelly herself must have had such a right to assign. Plaintiff argues that Kelly, as administrator of Torrence's estate, had the authority to disburse or assign the proceeds from the plan which, plaintiff contends, became part of Torrence's estate in the absence of a named beneficiary. We disagree with plaintiff's reasoning because it fails to come to grips with the facility-of-payment clause in the policy.[1]

---

[1] We do not reach the second step of Jackman Financial's argument, that Kelly had authority to make the assignment

(continued...)

A facility-of-payment clause is one practical solution to the problems that arise when an insured person dies without an effective designation of a beneficiary. Rather than requiring a court to decide through a potentially expensive interpleader action, the clause allows the insurer simply to choose one or more beneficiaries, presumably in line with what the insured probably would have wanted if he or she had known that the beneficiary designation was not effective. See generally *French v. Lanham*, 57 F.2d 422, 422-23 (D.C. Cir. 1932) (noting that the purpose of the facility-of-payment clause is for the insurer to be able to issue a prompt valid payment, including payment for funeral expenses).

When a facility-of-payment clause applies, it confers broad discretion on an insurer in making certain benefit determinations. See, *e.g.*, *Forcier*, 469 F.3d at 185 (describing how a facility-of-payment clause "puts both the policy-holder and the participant on notice that, in the absence of a beneficiary designation, payment by [the insurer] to any member(s) of an enumerated class 'will discharge [the company's] liability for the amount so paid'"). By using such a clause, an insurer can contract for varying

---

[1] (...continued)

two days before she received official letters of administration from the North Carolina courts. Jackman Financial maintains that Kelly's authority as administrator related back to the time of Torrence's death under North Carolina law. Because neither the policy nor its proceeds became part of Torrence's estate, it is irrelevant whether Kelly's authority as administrator related back.

degrees of discretion with respect to the distribution of insurance proceeds. See *id.*; *Brown v. Metropolitan Life Ins. Co.*, 100 F.2d 98, 99-100 (D.C. Cir. 1938) (recognizing the validity of facility-of-payment clauses); *La Raw v. Prudential Ins. Co. of America*, 12 F.2d 140, 142 (D.C. Cir. 1926) (right of election as to whom payment shall be made under a facility-of-payment clause "undoubtedly rests with the company").

The facility-of-payment clause in Torrence's group plan gave Humana the option of distributing the policy proceeds to any of the listed relatives or the estate identified in the clause. Like the facility-of-payment clause in *Forcier*, the clause in Torrence's group plan made Humana's right to choose any one of the listed entities unconditional, enabling the company to make its selection among them. See *Forcier*, 469 F.3d at 185. Although Torrence's estate was one of the possible recipients, as was Kelly as Torrence's mother, Humana was under no obligation to select either of them as the substitute beneficiary. Unless and until such a selection was made—and it never was—Kelly never had an interest in Torrence's life insurance policy or in its proceeds that she could assign to plaintiff either in her personal capacity or as administrator of Torrence's estate. Plaintiff's claim to collect based on Kelly's assignment fails.

Plaintiff nevertheless contends that Humana's decision to pay Torrence's children was arbitrary and capricious because Humana knew about Kelly's assignment of the plan proceeds to plaintiff and could have used its discretion to select Torrence's estate as beneficiary. Plaintiff

is correct that Humana could have used its discretion in this way, but it need not have done so. Humana was not required to bail plaintiff out from an imprudent business risk. Where an ERISA administrator makes an informed decision and articulates a plausible reason for its decision, that informed explanation is sufficient for us to uphold its decision. See *Mote v. Aetna Life Ins. Co.*, 502 F.3d 601, 606 (7th Cir. 2007). The totality of the evidence indicates that Humana decided to distribute the plan's proceeds to Torrence's children based on the facility-of-payment clause and the affidavit provided by Kelly. Humana explained this basis for its decision by describing in its correspondence with Kelly throughout 2007 the discretion granted to it by Torrence's group plan. It did not need to explain the "reasoning behind the reasons." *Herman v. Central States, Southeast & Southwest Areas Pension Fund*, 423 F.3d 684, 693 (7th Cir. 2005), quoting *Gallo v. Amoco Corp.*, 102 F.3d 918, 922 (7th Cir. 1996).

B.  *Humana's Request for Fees*

Humana asks this court for an award of reasonable attorney fees in its favor, though it did not seek them in the district court. ERISA authorizes an award of reasonable attorney fees to either party at the court's discretion. See 29 U.S.C. § 1132(g)(1). We have recognized a "modest presumption" in favor of awarding fees to the prevailing party, though that presumption can be rebutted. See *Laborers' Pension Fund v. Lay-Com, Inc.*, 580 F.3d 602, 615 (7th Cir. 2009), quoting *Senese v. Chicago Area I.B. of*

*T. Pension Fund*, 237 F.3d 819, 826 (7th Cir. 2001). Here, we find that Jackman Financial's position and the surrounding circumstances effectively rebut the presumption, so we deny Humana's request.

In determining whether a fee award is appropriate under ERISA, we have long recognized two tests, both of which ask whether the losing party had a legitimate basis to bring its suit. See *Production & Maintenance Employees' Local 504, Laborers' Int'l Union v. Roadmaster Corp.*, 954 F.2d 1397, 1402 (7th Cir. 1992). Under the first test, an award of fees to a successful defendant in an ERISA suit "may be denied if the plaintiff's position was both 'substantially justified'—meaning something more than non-frivolous, but something less than meritorious—and taken in good faith, or if special circumstances make an award unjust." See *Herman*, 423 F.3d at 696; *Harris Trust & Savings Bank v. Provident Life & Accident Ins. Co.*, 57 F.3d 608, 616-17 (7th Cir. 1995).

Under the second test, we consider the following factors: (1) the degree of the offending party's culpability or bad faith; (2) the ability of the offending party to satisfy personally an award of attorney fees; (3) whether an award of attorney fees would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the plan as a whole; and, (5) the relative merits of the parties' positions. See *Sullivan v. William A. Randolph, Inc.*, 504 F.3d 665, 671 (7th Cir. 2007); *Brewer v. Protexall, Inc.*, 50 F.3d 453, 458 (7th Cir. 1995). This five-factor test is often used in conjunction with the "substantially justified" test and

largely involves the same inquiry. See, *e.g.*, *Herman*, 423 F.3d at 696; *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 593 (7th Cir. 2000) (concluding that regardless of which test is used, the question asked is essentially the same); *Quinn v. Blue Cross & Blue Shield Ass'n*, 161 F.3d 472, 478 (7th Cir. 1998) (same).

Humana asserts that it should be awarded attorney fees because Jackman Financial's position was not substantially justified. The question is close, but we disagree. The indications here are that Jackman Financial's complaint was filed in good faith in an attempt to recover the outstanding balance it was owed. In the days following her son's death, Kelly intended to assign Torrence's plan proceeds to Jackman Financial to cover the cost of her son's funeral. It appears that neither Jackman Financial nor Kelly knew about or considered the facility-of-payment clause in Torrence's group plan at the time the assignment was executed. Long before Humana paid the policy proceeds, Jackman Financial gave Humana timely notice of its claim and the basis for it. Although the suit was not successful, it had an understandable foundation.

Humana also argues that an award of fees in its favor would deter future conduct by similarly situated persons and would conserve plan expenses. On the merits, we agree with Humana that where an insurance plan contains a similar facility-of-payment provision, the insurer is able to select a substitute beneficiary at its discretion. Third parties seeking to recover by filing suit will likely be unsuccessful. Nevertheless, we do not

believe that awarding fees to Humana in this case, in light of the assignment and Jackman Financial's payment of the funeral expenses in reliance upon it, will have any more deterrent effect than our clear statement that a facility-of-payment provision grants the insurer broad discretion. Future potential beneficiaries, as well as assignees of such potential beneficiaries, should take heed as to the broad selection authority granted to the insurer through these clauses—longstanding features of insurance policies. We do not discount the possibility of fee awards in future cases if similar facility-of-payment clauses defeat future unsuccessful challenges to insurers' exercises of discretion.

III. *Conclusion*

The facility-of-payment clause in Torrence's group life insurance plan gave Humana the authority to choose a beneficiary from the pre-determined list laid out in the plan. Because Humana acted within its rights and not in a manner that was arbitrary or capricious, we AFFIRM the judgment of the district court.