NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 31, 2011[*]
Decided November 28, 2012

**Before**

JOEL M. FLAUM, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

Nos. 10-3409 & 11-1750

| | |
|---|---|
| SHARON MONDRY, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Western District of Wisconsin |
| | |
| *v.* | No. 06-cv-00320-bbc |
| | |
| AMERICAN FAMILY MUTUAL | Barbara B.Crabb, |
| INSURANCE COMPANY, *et al.*, | *Judge*. |
| *Defendants-Appellees.* | |

## O R D E R

---

[*]Pursuant to Seventh Circuit Internal Operating Procedure 6(b), these consolidated appeals were submitted to the panel of judges that disposed of Mondry's prior appeal. *See Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781 (7th Cir. 2009). No party has included in its brief a statement indicating that oral argument is necessary, *see* Fed. R. App. P. 34(a)(1) and Circuit Rule 34(f), and upon review of the briefs and the record and consideration of the standards set forth in Fed. R. App. 34(a)(2), the panel has determined that oral argument is unnecessary to the resolution of this appeal. The appeals were therefore submitted on the briefs and the record.

In these consolidated appeals, Sharon Mondry challenges both the damages and the fees awarded to her in this suit filed under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. Finding no clear error or abuse of discretion in any of the district court's determinations, we affirm.

**I.**

Mondry worked for American Family Mutual Insurance Company ("American Family") until September 2003. She participated in the AmeriPreferred PPO Plan (the "Plan"), a self-funded group health plan that American Family offered to its employees. During the time period relevant to this litigation, American Family had contracted with Connecticut General Life Insurance Company through its affiliates (collectively, "CIGNA") to act as the Plan's third-party claims administrator, meaning that CIGNA would handle any and all benefit claims against the Plan.

Mondry's son Zev, whom she had enrolled as a Plan beneficiary, required speech therapy. Initially, he received that therapy through Wisconsin's Birth to Three program for infants and toddlers with developmental delays and disabilities. When Zev aged out of that program, Mondry arranged for him to continue his speech therapy at the Communication Development Center ("CDC") beginning in January 2003. CDC in turn submitted invoices to the Plan seeking reimbursement for the services it provided to Zev.

CIGNA denied the claim for reimbursement, reasoning that Zev's speech therapy was not a medically necessarily service covered by the terms of the Plan. In its correspondence with Mondry denying her original claim and then her first-level appeal, CIGNA cited two documents as authoritative: CIGNA's Benefit Interpretation Resource Tool for Speech Therapy ("BIRT"), and CIGNA's Clinical Resource Tool for Speech Therapy ("CRT"). Neither of these was a document setting forth the terms of the AmeriPreferred Plan and, as it turned out, both were inconsistent with the governing terms of the Plan. In the end, CIGNA realized its error and belatedly granted Mondry's claim for benefits. But that occurred only after Mondry's counsel succeeded in obtaining copies of these documents; and due in large part to CIGNA's intransigence, that task took an exceedingly long time to accomplish (two years to reverse the initial denial of benefits, and more than four years to be reimbursed completely for her out-of-pocket costs).

Pursuant to 29 U.S.C. § 1024(b)(4), American Family had a duty to produce Plan

documents to Mondry within thirty days of her request. After she finally succeeded in obtaining benefits from CIGNA, Mondry sued both it and American Family for violation of section 1024(b)(4). She also separately alleged that both defendants violated their fiduciary duties to her as a Plan participant by withholding from her the key documents – in particular, the BIRT and CRT – that she needed to prevail in her quest for benefits under the Plan. *See* 29 U.S.C. § 1104(a)(1).

In our prior decision, we sustained Mondry's claims in part. *Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781 (7th Cir. 2009) ("*Mondry I*"). We agreed with Mondry that, under the unique circumstances of her case, CIGNA's express reliance on the BIRT and CRT effectively rendered those two internal documents Plan documents that were subject to timely production pursuant to section 1024(b)(4). We were willing to assume that CIGNA's private reliance on such internal tools would not have brought them within the relatively small universe of tools that we and other courts had deemed to be documents that must be produced to a participant on demand. 557 F.3d at 799. We cited a substantial line of cases to that effect, including the First Circuit's decision in *Doe v. Travelers Ins. Co.*, 167 F.3d 53, 60 (1st Cir. 1999). *Mondry*, 557 F.3d at 797-80. But because CIGNA had expressly cited those documents as authoritative to Mondry, and indeed had quoted language from one of them (the BIRT) in explaining why it believed Zev's speech therapy was not compensable, CIGNA had effectively rendered those tools documents which governed the operation of the Plan. *Id.* at 799-800. We also held that the claims administration agreement between American Family and CIGNA qualified as a Plan document, in the sense that it defined their respective obligations vis-à-vis the divided administration of the Plan. *Id.* at 796. However, we noted that only American Family, as the Plan administrator, bore the duty to produce Plan documents under section 1024(b)(4). *Id.* at 793-95. CIGNA may have had sole possession of the BIRT and CRT, but the liability for the failure to produce such documents fell upon American Family alone; and we were not convinced that it was beyond American Family's power to obtain access to such documents. *Id.* at 801-03. Separately, we concluded that American Family could additionally be liable to Mondry for breaching the fiduciary duty it owed to her in its role as the Plan administrator – specifically for the lost time value of the money Mondry was forced to spend out of pocket on her son's speech therapy until she finally obtained copies of the CRT and BIRT and was able to prevail in her appeal of CIGNA's denial of her claim for benefits. *Id.* at 803-09; *see* 29 U.S.C. § 1104(a)(1). We remanded to the district court with directions to enter summary judgment in favor of Mondry on the section 1024(b)(4) document production claim and to determine an appropriate penalty under 29 U.S.C. § 1132(c)(1). 557 F.3d at 809. We

further directed the court to conduct a trial on whether American Family had breached its fiduciary obligation to Mondry by failing to comply with section 1024(b)(4). *Id.*

On remand, the district court complied with our mandate and, after conducting a two-day trial, awarded statutory damages of $9,270 to Mondry for American Family's failure to timely produce Plan documents to her; and after finding that American Family had breached the fiduciary duty it owed to Mondry, the court awarded her stipulated damages of $603.25 for that breach. R. 139. In calculating the award of statutory damages, the court determined that daily penalties for the failure to produce a Plan document did not begin to accumulate until Mondry and her counsel placed American Family on notice that she was seeking that particular document. With respect to the CRT, the court found that a specific reference to that document in an October 30, 2003 letter from Mondry's counsel to CIGNA, on which American Family was copied, triggered American Family's duty to produce that document and rendered American Family liable for daily penalties beginning thirty days after that request. *Id.* at 20-21. Counting forward from November 30, 2004, a total of 215 days passed before Mondry obtained a copy of the CRT. *Id.* at 21. As to the BIRT, the court deemed an April 21, 2004 fax from Mondry's counsel to American Family's counsel sufficient to place American Family on notice that she was seeking that particular interpretive tool. *Id.* at 21-22. Penalties were triggered thirty days thereafter and accrued for a total of 94 days before the document was finally produced. *Id.* at 22. Mondry also sought penalties for the failure to produce the General Services Agreement ("GSA") between American Family and CIGNA, but the court declined to impose penalties for that document in large part because although Mondry had asked CIGNA for that document, it had never made that request to American Family itself. *Id.* at 22-23. American Family was thus liable for a total of 309 days' worth of penalties based on its delay in producing the CRT and BIRT. *Id.* at 23. The court declined Mondry's request to increase that total by stacking the penalties, i.e., deeming each successive request for the same document sufficient to trigger a separate penalty. *Id.* at 23-24. Finally, although Mondry sought the maximum penalty of $110 per day, the court found that $30 per day was a fair and reasonable penalty on the facts of the case, and that no larger penalty was necessary to serve as a deterrent. *Id.* at 24-25. As to Mondry's breach of fiduciary duty claim, the court found that although American Family had made a variety of efforts to assist Mondry in her effort to reverse CIGNA's adverse benefits determination, it could have done more to help Mondry obtain the interpretive tools that CIGNA was mistakenly relying upon to deny her claim. The court thus agreed with Mondry that American Family had breached its fiduciary obligation to her, and awarded her stipulated damages of $603.25,

representing the lost time value of her money during the length of time it took Mondry to succeed in reversing CIGNA's initial denial of benefits. *Id.* at 27-28.

The court also determined that Mondry was entitled to an award of attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(1), but the amount that the court ultimately awarded to Mondry was much less than she sought. R. 162, 172. At the outset, the court found that because section 1132(g)(1) confined judicial discretion to award fees and costs to "any *action* under this subchapter" (emphasis ours), it could not reimburse Mondry for any fees she incurred in connection with her ultimately successful effort to obtain insurance benefits from CIGNA, which effort took place before she filed this suit against CIGNA and American Family. R. 1692 at 8-9. Second, the court determined that because American Family's position in this litigation was substantially justified prior to this court's decision in *Mondry I*, it would limit Mondry's right to fees to the phase of the litigation following our decision. *Id.* at 11-14. The court had no doubt that Mondry had achieved success in *Mondry I* itself, which recognized her right to production of Plan documents including the BIRT and CRT. But our precedents had conditioned a successful ERISA litigant's right to fees on a showing that her opponent's litigating position was not substantially justified. *Id.* at 11 (citing *Lowe v. McGraw-Hill Cos.*, 361 F.3d 335, 339 (7th Cir. 2004)). Prior to our decision in *Mondry I*, the court reasoned, American Family's position was substantially justified: our own opinion characterized Mondry's right to interpretive tools like the BIRT and CRT as a "closer question" than others, and we recognized that other courts had rejected the characterization of such tools as plan documents which must be produced on demand. *Id.* at 12-13. Mondry herself, in responding to American Family's subsequent petition for a writ of certiorari, had noted the unsettled state of the case law as to the scope of section 1024(b)(4). *Id.* at 13. Prior to *Mondry I*, then, American Family held a reasonable belief that it was not obliged to produce documents akin to the BIRT and CRT to Mondry. *Id.* at 14. Looking alternatively to the five factors this and other courts have also identified as relevant to a party's entitlement to attorney's fees, *id.* (citing, inter alia, *Lowe*, 361 F.3d at 339), the court reaffirmed its conclusion that Mondry was not entitled to fees prior to *Mondry I*: (1) the court found no evidence that American Family had acted in bad faith; (2) although American Family was capable of paying a fee award, this by itself was not a reason weighing in favor of fees; (3) a fee award was not needed to deter others, as *Mondry I* itself articulated the circumstances under which internal resource materials constitute plan documents that must be produced; (4) on the positive side of the ledger, the suit would be of benefit to other plan participants in the future; but (5) the merits of the suit were far from obvious at the outset of the litigation. *Id.* at 15-16.

Focusing on the post-*Mondry I* phase of the litigation, the court viewed the number of hours for which Mondry was seeking reimbursement to be excessive. It appeared to the court that the total hours logged by Mondry's counsel after the appeal corresponded to an average of 31 hours per week for 18 months. For a small public-interest law firm, that seemed to represent an implausible devotion of time to a single matter, especially one entailing preparation "for a short [bench] trial with no discovery." *Id.* at 17. Furthermore, the submitted fee records were not supported by "a careful and candid explanation" of the various tasks to which the time was devoted. *Id.* at 18. The court therefore gave counsel a choice: accept an award of $35,000 for time spent on the trial and trial preparation, plus a sum of $2,500 for the work done in responding to American Family's petition for a writ of certiorari in the Supreme Court – which sums the court deemed sufficient to compensate Mondry and her counsel for the time reasonably required to complete those tasks – or submit a more reasonable fee petition with adequate support. *Id.* at 18-19. Mondry's counsel opted to submit a revised fee petition.

The second fee petition fared no better than the first. R. 172. Counsel submitted a request in the amount of $245,820.63 for a total of 1,528 hours of work performed in the wake of the *Mondry I* decision. The court viewed that the submission was better documented than the original submission, *id.* at 2, but found it wholly unreasonable in terms of the level of compensation requested.

> Plaintiff's counsel is asserting that it was necessary to put in the equivalent of 38 40-hour weeks to draft a response to defendant's petition for a writ of certiorari and prepare for a two-day non-jury trial with no experts. That makes no sense. Even a non-profit organization cannot afford to allocate so many resources to one small case. After all, the great majority of the trial discovery had been done in connection with the first trial in 2008.

*Id.* at 2-3. The court deemed the still-unreasonably large fee request to be an implicit choice to accept the total of $37,500 that it had previously offered Mondry, and the court awarded that amount. *Id.* at 3. The court also awarded costs of $1,917.83. *Id.*

## II.

Our review begins with the district court's determination of the statutory penalties to which Mondry was entitled for American Family's failure to timely produce the Plan documents that she requested, and then turns to the question of attorney's fees.

For the reasons we set forth below, we find no error or abuse of discretion in either amount that the court awarded to Mondry.

## A.     Damages

As we noted above, the district court awarded Mondry penalties of $30 per day for delays totaling 309 days in producing the BIRT and CRT to her. The court imposed no penalty for American Family's failure to produce the GSA to Mondry based on its finding that she had never asked American Family for a copy of that document. Mondry contends that the court erred in excluding the latter document from its damages assessment, and, as to the BIRT and CRT, that the court imposed too modest of a daily penalty for an insufficient number of days. We disagree.

First, the district court did not err in excluding the GSA between American Family and CIGNA from its calculation of statutory penalties. Our opinion in *Mondry I* said that the agreement qualified as a Plan document that was subject to production; and the GSA was relevant to Mondry's attempt to obtain benefits in the sense that it revealed American Family's ability to demand that CIGNA turn over guidelines like the CRT and BIRT. *Mondry I*, 557 F.3d at 796. But the district court found that Mondry never specifically requested the GSA from American Family, and it did not clearly err in that determination. A plan administrator is entitled to "clear notice" of the documents that a participant is seeking. *Anderson v. Flexel, Inc.*, 47 F.3d 243, 248 (7th Cir. 1995). None of Mondry's correspondence with American Family alerted it that the agreement was among the documents she was seeking. Mondry's best argument in this regard is that her January 7, 2004 letter to CIGNA and American Family noted that CIGNA itself had refused to produce the "insurance contract" on the ground that it was prohibited by law from doing so and that it was up to American Family as Mondry's employer to produce Plan documents to her. Whether this reference provided any notice to American Family that Mondry was seeking the GSA is debatable; but it certainly was not clear notice.[1]

Second, we do not believe that the district court erred in determining the dates on which statutory penalties began to accrue for American Family's failure to produce the CRT and BIRT. The district court determined that it was an October 30, 2003 letter from Mondry's counsel that triggered American Family's obligation to produce the CRT: in

---

[1] We may assume for the sake of argument that Mondry did not subsequently withdraw her request for the GSA in her attorney's December 21, 2004 correspondence with CIGNA, as the district court found. *See* R. 139 at 22.

that letter, Mondry's lawyer pointed out that CIGNA had cited the CRT in a July 23, 2003 letter to Mondry affirming the denial of her claim, and counsel asked that CIGNA provide the CRT and any other documents relied on in denying Mondry's claim. R. 139 at 20-21; *see id.* at 9. As to the BIRT, the court said that it was fair to read an April 21, 2004 fax from Mondry's counsel to American Family's counsel as incorporating an implicit request for that second document: the fax asked for "the rules, guidelines, or protocols used as the premise for the denial of services" to Mondry. R. 139 at 21-22; *see id.* at 10. Mondry contends that two prior pieces of correspondence were sufficient to trigger American Family's statutory obligation to produce those documents to her: (1) On June 30, 2003 Mondry wrote to CIGNA, with a copy to the director of American Family's benefits department, asking for "a complete copy of the Plan documents," adding that the Summary Plan Description she had been told to access on the American Family website was not complete. *See* R. 139 at 7. Attached to that letter was a copy of CIGNA's June 13, 2003 letter to CDC denying coverage for Zev's speech therapy and referencing the BIRT. (2) On July 28, 2003, Mondry again wrote to CIGNA, with a copy to American Family's benefits director, repeating her request for Plan documents. Mondry Ex. 5. Among the documents attached to that letter was CIGNA's letter of July 23, 2003, again denying the claim and this time referencing the CRT.

The district court plausibly concluded that neither of these two earlier letters was sufficient to trigger American Family's obligation to produce the CRT or BIRT. In contrast to the subsequent letters that the district court found sufficient, neither the June 30 nor the July 28 letter expressly asked American Family to produce the CRT or BIRT or, more generically, for any internal guidelines CIGNA may have relied upon in denying Mondry's claim; both letters asked only generally for "plan documents." As we discussed in *Mondry I*, the CRT and BIRT were not Plan documents in the usual sense; they were instead the sorts of interpretive guides that were extraneous to the Plan and that a majority of courts had found not to be subject to production under the statute. 557 F.3d at 797-98. We may assume that Mondry's June 30 and July 28 letters alerted American Family to the fact that CIGNA was in fact relying on the CRT and BIRT in denying Mondry's claims, as Mondry included with those letters copies of CIGNA's own letters to her citing those documents. But it would not necessarily have been apparent to American Family that those were the documents to which Mondry was referring when she asked for copies of the "plan documents." American Family, as the Plan administrator, understood from the beginning that it was the Summary Plan Description which stated the actual, governing terms of the Plan; it therefore properly directed Mondry to that document. Interpretive guides like the BIRT and CRT,

whatever their content, could not supersede or displace the actual Plan terms. *Mondry I* represented a departure from prior case law on this subject in holding that such guides effectively may become plan documents subject to production under section 1024(b)(4) when a claims administrator such as CIGNA has relied on them expressly in denying a plan participant's claim for benefits. 557 F.3d at 799-801. American Family only became responsible for producing those documents once it was clear that those documents in particular were what she and her counsel were seeking. It had such clear notice when Mondry's subsequent correspondence singled out those documents (or those types of documents). But in advance of our decision in *Mondry I*, American Family had no reason to understand a boilerplate request for "plan documents" to include interpretive guides such as the BIRT and CRT.

Next, Mondry contends that the court erred in focusing solely on the document requests that she made of American Family. Understandably, Mondry directed a number of her document requests solely to CIGNA, given that it was CIGNA which, in the course of handling her claim, had explicitly relied on interpretive tools and language therefrom that could not be found in American Family's insurance plan. In *Mondry I*, we held that CIGNA's express reliance on and citation to such interpretive guidelines rendered them Plan documents that American Family, as the Plan administrator, was obligated to produce. 557 F.3d at 799-800. Among other points, we emphasized that CIGNA acted in American Family's stead for purposes of claims administration, such that its actions in relying (mistakenly) on the BIRT and CRT in denying Mondry's claim could bind American Family in terms of what constituted a Plan document. *Id.* at 801-02. Mondry urges us to take the agency rationale a step further here, and to treat any document request made to CIGNA as if it were a request made to American Family, thus rendering American Family liable for CIGNA's delays as well as its own in producing the requested documents.

But this takes our rationale in *Mondry I* too far. CIGNA was American Family's agent only with respect to claims administration. CIGNA's actions could render certain documents Plan documents subject to production under ERISA; but the duty to produce such documents, as we recognized in *Mondry I*, lay solely with American Family as the Plan administrator, *id.* at 801. American Family thus was not vicariously liable for CIGNA's delays in responding to Mondry's demands for the BIRT and CRT.[2]

---

[2] We add that there is no evidence that CIGNA had a history of citing extra-plan

(continued...)

Fourth and finally, the district court did not abuse its discretion in holding American Family liable for a statutory penalty of $30 per day for each of the 309 days that it failed to timely produce the BIRT and CRT. Mondry contends principally that the court should have stacked the penalties, by treating each request for the same document as triggering a separate daily, cumulative penalty. The district court noted that Mondry had cited no support for that relief, but found that in any event stacking was not necessary to arrive at a fair penalty. R. 139 at 23-24.

Like the district judge, we assume without deciding that stacking might be appropriate in some cases; but we detect no abuse of discretion in the judge's conclusion that this was not such a case. In arriving at an appropriate penalty, the district court weighed the relevant considerations, including the prejudice that Mondry suffered due to the delay in producing the BIRT and CRT; the unsettled state of the law at the time of Mondry's requests as to whether American Family was obligated to produce such documents; and American Family's reasonable belief that Mondry did not need those documents because the Plan terms (to which Mondry had access) overrode anything in the BIRT or CRT. *Id.* at 24-25. We agree with the court that the $9,270 penalty it imposed was substantial and sufficient to deter future violations. There is no evidence that American Family acted in bad faith; to the extent it could have done more to assist Mondry, it is at most guilty of negligence. We do not discount the prejudice that Mondry suffered as a result of her inability to obtain the resource tools on which CIGNA was relying, mistakenly as it turned out, to deny her claim. However, as the district judge recognized, the real fault here lies with CIGNA; and yet it was American Family, not CIGNA, that bore the relevant duty of production, and American Family's actions were not so egregious as to make the penalty the district court imposed unreasonable. As with any discretionary assessment, a different judge might have chosen to impose a more severe penalty. But the district judge in this case conscientiously reviewed the evidence and competing equities, and by no stretch of the imagination can we describe the penalty she imposed as an abuse of discretion.

---

[2](...continued)
interpretive guides like the BIRT and CRT in its claims decisions and that American Family was aware of such a history when Mondry first came to American Family for help in locating these documents. So far as the record reveals, CIGNA's mistaken reliance on the BIRT and CRT in denying Mondry's claim was an isolated incident.

**B.    Attorney's Fees**

Mondry's threshold argument with respect to fees is that the district court applied the wrong standard in assessing her entitlement to fees. The court, looking to the standard we first adopted in *Bittner v. Sadoff & Rudoy Indus.*, 728 F.2d 820, 830 (7th Cir. 1984), considered whether (and when) American Family's defense was substantially justified. As noted, the district court determined that, prior to our decision in *Mondry I*, American Family had substantial justification for thinking that internal documents such as the BIRT and CRT were not Plan documents that it was obligated to produce to Mondry; Mondry was thus not entitled to fees for the litigation leading up to *Mondry I*. Mondry contends that, in lieu of *Bittner*'s substantial justification test, which she views as inconsistent with the Supreme Court's decision in *Hardt v. Reliance Std. Life Ins. Co.*, 130 S. Ct. 2149, 2157-58 (2010), the court should have looked to the five-factor test first set forth in *Eaves v. Penn*, 587 F.2d 453, 465 (10th Cir. 1978). We have cited the *Eaves* test with approval in a line of cases beginning with *Marquardt v. N. Am. Car. Corp.*, 652 F.2d 715, 717 (7th Cir. 1981), and we have continued to cite it despite the criticism of its multi-factor approach we expressed several years ago in *Sullivan v. William A. Randolph, Inc.*, 504 F.3d 665, 671-72 (7th Cir. 2007). Properly applied, Mondry argues, the five-factor *Eaves* test makes clear that she is entitled to an award of fees covering the full expanse of this litigation, before and after *Mondry I*.

The district court did not err in applying the *Bittner* test and assessing whether American Family's position was substantially justified. Several points deserve mention in this regard. First, the fact that Mondry had "some success on the merits" in this litigation established her eligibility for an award of attorney's fees under section 1132(g)(1) under *Hardt*, 130 S. Ct. 2158, 2159, but it did not render her entitled to a fee award; it remained for the district court, in the exercise of its discretion, to determine whether fees were appropriate. *E.g.*, *Kolbe & Kolbe Health & Welfare Benefit Plan v. Medical Coll. of Wis., Inc.*, 657 F.3d 496, 505 (7th Cir. 2011) (quoting *Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 494 (7th Cir. 2011)). *Hardt* itself "d[id] not foreclose" the application of an additional test in order to determine whether fees should be awarded to a party whose litigation success has made her eligible for such an award. 130 S. Ct. at 2158 n.8. Second, in multiple decisions issued after *Hardt*, we have recognized the ongoing vitality of *Bittner*'s substantial justification test. *E.g.*, *Kolbe & Kolbe Health & Welfare Benefit Plan*, 657 F.3d at 505-06; *Kough v. Teamsters' Local 301 Pension Plan*, 437 F. App'x 483, 490 (7th Cir. 2011) (non-precedential decision); *Pakovich*, 653 F.3d at 494; *Jackman Fin. Corp. v. Humana Ins. Co.*, 641 F.3d 860, 866 (7th Cir. 2011); *Huss v. IBM Medical & Dental Plan*, 418 F. App'x 498, 512 (7th Cir. 2011) (non-precedential decision); *see also Loomis v. Exelon Corp.*, 658 F.3d 667, 675 (7th Cir. 2011) (whether *Bittner*'s substantial justification test survived

*Hardt* is an "issue we can avoid until the answer matters"). Third, the district court's application of *Bittner* did not result in a wholesale denial of fees to Mondry; rather, because the court deemed American Family's defense substantially justified up to the release of our decision in *Mondry I*, it limited the fee award to the litigation taking place after *Mondry I*.

Moreover, the court did not focus on the *Bittner* test to the exclusion of the criteria identified as relevant in the five-factor test. Rather, the court went on to apply the five-factor test and state that the latter test did not alter its conclusion that fees should not be awarded for the phase of the litigation leading up to *Mondry I*. R. 162 at 15-16. This is consistent with our observation in *Lowe v. McGraw-Hill Cos.*, *supra*, that "the factors in the [five-factor] test are used to structure or implement, rather than to contradict, the 'substantially justified' standard, described in *Little v. Cox's Supermarkets*, 71 F.3d 637, 644 (7th Cir. 1995), as the 'bottom-line' question to be answered, even when the more elaborate test is used." 361 F.3d at 339. *See also Kolbe & Kolbe Health & Welfare Benefit Plan*, 657 F.3d at 506; *Huss*, 418 F. App'x at 512; *Sullivan*, 504 F.3d at 672. It is also consistent with the observation we have made repeatedly that the two tests pose essentially the same inquiry: "was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?" *Quinn v. Blue Cross & Blue Shield Ass'n*, 161 F.3d 472, 478 (7th Cir. 1998) (quoting *Hooper v. Demco, Inc.*, 37 F.3d 287, 294 (7th Cir. 1994)); *see also, e.g., Kolbe & Kolbe Health & Welfare Benefit Plan*, 657 F.3d at 506; *Pakovich*, 653 F.3d at 494; *Jackman Fin. Corp.*, 641 F.3d at 866; *Central States, Se. & Sw. Areas Pension Fund v. Hunt Truck Lines, Inc.*, 272 F.3d 1000, 1004 (7th Cir. 2001); *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 593 (7th Cir. 2000).

Mondry next argues that American Family's litigating position prior to *Mondry I* was not substantially justified, but there is no merit to that argument. As the district court pointed out, and as we ourselves recognized in *Mondry I*, most courts had adopted a narrow definition of plan documents subject to production under section 1024(b)(4) which excluded interpretive tools akin to BRT and CRT. 557 F.3d at 797-98. In that respect, our decision constituted a departure based on particular facts presented in this case. American Family certainly lost on that issue in *Mondry I*, for all of the reasons that Mondry now emphasizes as evidence of the merits of her position. But there is a difference between being on the losing side in litigation and pursuing a position that lacks substantial justification. *See Harris Trust & Sav. Bank v. Provident Life & Acc. Ins. Co.*, 57 F.3d 608, 616 n.4 (7th Cir. 1995) ("To be 'substantially justified' the losing party's position needs to be 'more than merely not frivolous, but less than meritorious.'") (quoting *Bittner*, 728 F.2d at 830). The fact that the relevant law was in an uncertain state,

and that the losing party had support in the cases for its position, tends to show that its position was substantially justified, notwithstanding the fact that it ultimately lost. *E.g.*, *Gatimi v. Holder*, 606 F.3d 344, 348 (7th Cir. 2010); *Potdar v. Holder*, 585 F.3d 317, 320 (7th Cir. 2009); *Marcus v. Shalala*, 17 F.3d 1033, 1037 (7th Cir. 1994). Given the extent to which our decision in *Mondry I* turned on the unique facts of this case, we agree with the district court that American Family's defense prior to our decision was substantially justified.

Mondry also contends that, to the extent the district court consulted the five-factor test, it applied the relevant factors incorrectly; but the court committed no clear error in its application of the factors. As to the first of these factors (the degree of American Family's culpability or bad faith), the court recognized that American Family was culpable in the sense that it could have done more to ensure that Mondry obtained copies of the BIRT and CRT in a more timely fashion; indeed, that was the basis for its finding that American Family had breached its fiduciary duty to Mondry. But the court rightly concluded that American Family's passivity was not so egregious as to evince a lack of good faith: It did make some efforts to help Mondry with her appeal; it did not have either the BIRT or CRT in its own possession, as these were CIGNA's internal tools; and it was not at all clear, prior to our decision in *Mondry I*, that American Family had an obligation to produce internal documents such as these. R. 139 at 26-27; R. 162 at 15. Bad faith, we hasten to add, cannot be deemed a prerequisite to a fee award after *Hardt*. *Loomis*, 658 F.3d at 674-75. But the district court's broader point – that given the legal and factual context confronting American Family, its conduct was not especially blameworthy – remains valid and relevant to Mondry's entitlement to fees. Second (as to the ability to satisfy an award of attorney's fees), the court had no doubt that American Family had the ability to pay a fee award. R. 162 at 15-16. Mondry emphasizes that the court, perhaps mistakenly, assumed that any such award would be paid from Plan funds rather than American Family's own pocket. But the court flagged that possibility primarily in explaining the rationale behind the substantial justification rule rather than as a reason not to award fees in this particular case. R. 162 at 11. (The court did, after all, go on to award fees.) Third (as to whether an award of fees would deter others acting under similar circumstances), the district court rightly recognized that *Mondry I* itself will serve as a substantial deterrent against repetition of what occurred here. *Id.* at 16. Perhaps a more sizeable fee award might give more heft to the deterrent value of this litigation; but we have no reason to doubt the sufficiency of *Mondry I* alone. Fourth (regarding the benefit conferred on members of the pension plan as a whole), the court recognized and acknowledged that Mondry's suit would inure to the benefit of other plan participants in a similar position, just as Mondry argues. *Id.* at

16. Fifth (as to the relative merits of the parties' postions), although Mondry's victory in *Mondry I* certainly establishes that she had the better of the argument regarding the duty to produce documents such as the BIRT and CRT, she fails to acknowledge the extent to which her victory was not a foregone conclusion given the extent to which American Family's position had substantial support in the case law.

In sum, the district court did not err in limiting its fee award to litigation that occurred subsequent to our decision in *Mondry I*. American Family's position prior to that decision was reasonable given the small number of documents prior decisions had recognized as plan documents and the distinct minority of decisions that had recognized interpretive tools such as the BIRT and CRT as plan documents that must be produced. As the district court found, American Family could and should have done more to help Mondry procure these documents from CIGNA. At the same time, as Judge Crabb recognized, American Family had opted to employ a third-party claims administrator to avoid the conflict of interest inherent in deciding claims against a plan that American Family self-funded; it ran the risk of defeating that arrangement by inserting itself into the claims administration process. R. 139 at 15-16. American Family's employees also believed, not unreasonably, that because terms set forth in the Summary Plan Description were dispositive, and because Mondry at all times had access to the SPD, she had what she needed to pursue her claim with CIGNA. As between CIGNA and American Family, CIGNA was by far the more culpable party. American Family was not blameless, but its failings were both more modest than those of CIGNA and other ERISA violators we have seen, and understandable given the relative dearth of precedent obliging it to produce internal guidelines, let alone guidelines not in its own possession.

Finally, Mondry claims that the district court lacked adequate legal and factual support for the $37,500 in fees it awarded to her. She maintains that the court instead should have followed the familiar lodestar approach in calculating the fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983); *Anderson v. AB Painting & Sandblasting, Inc.*, 578 F.3d 542, 544 (7th Cir. 2009).

On the facts of this case, the court did not abuse its discretion in choosing to award fees in the manner it did. Having presided over the trial, the district court of course was in the best position to determine a reasonable fee. *See, e.g., Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011). It was required to give a concise but clear explanation for its decision as to fees, *Hensley*, 461 U.S. at 437, 103 S. Ct. at 1941; "the record ought to assure us that the district court did not 'eyeball' the fee request and

'cut it down by an arbitrary percentage because it seemed excessive to the court.'" *Spellan v. Bd. of Educ. for Dist. 111*, 59 F.3d 642, 647 (7th Cir. 1995) (quoting *Tomazzoli v. Sheedy*, 804 F.2d 93, 97 (7th Cir. 1986)); *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1314 (7th Cir. 1996). Although no one formula or approach controls the district court's determination of a fee award, *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 856 (7th Cir. 2009); *Tomazzoli*, 804 F.2d at 97, the assessment ordinarily is to begin with a determination as to the number of hours reasonably expended by counsel on the case, *e.g.*, *Anderson*, 578 F.3d at 544. Mondry's counsel frustrated that inquiry. In the first instance, he requested compensation for a total number of hours that was plainly unreasonable given the length of the trial (two days), the relatively straightforward nature of the issues involved, and the fact that discovery had been conducted prior to *Mondry I*. The court gave him a second chance to submit a more reasonable fee request, but although counsel did a better job at documenting the time expended, he did no better the second time around in paring to a reasonable number of hours the time for which he sought compensation. It appears, in fact, that he eliminated only the hours spent by student interns on the case, with no reduction in attorney time. Even on appeal, Mondry's counsel has made no genuine effort to justify the excessive number of hours spent preparing for the short trial. In this particular context, it was within the court's discretion to set aside the usual lodestar approach and award Mondry the fixed amount of fees it had suggested earlier. We ourselves have employed a somewhat similar approach in compensating parties for having to respond to frivolous appeals. *Coleman v. C.I.R.*, 791 F.2d 68, 72-73 (7th Cir. 1986) (coll. cases); *see, e.g.*, *Berwick Grain Co. v. Ill. Dep't of Agric.*, 217 F.3d 502, 506 (7th Cir. 2000) (per curiam); *Listle v. Milwaukee Cnty.*, 138 F.3d 1155, 1160 (7th Cir. 1998); *Perry v. Pogemiller*, 16 F.3d 138, 140 (7th Cir. 1993); *see also State Indus. Inc. v. Mor-Flo Indus., Inc.*, 948 F.2d 1573, 1581 & n.12 (Fed. Cir. 1991) (coll. cases). It is worth adding that the total of $35,000 awarded by the district court for trial and trial preparation corresponds to 140 hours (more than three 40-hour weeks) at the hourly rate of $250 that Mondry's lead counsel used in the fee petition. *See* R. 167-4 at 22. We view that as a reasonable amount of compensable time spent on the case following our decision in *Mondry I*.

AFFIRMED.