# United States Court of Appeals
## For the First Circuit

No. 06-1088

LORRAINE FORCIER, AS
ADMINISTRATOR OF THE ESTATE OF DARREN FORCIER,

Plaintiff, Appellee,

v.

METROPOLITAN LIFE INSURANCE COMPANY ET AL.,

Defendants.
_____

DORIS FORCIER,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. F. Dennis Saylor IV, U.S. District Judge]

Before

Selya, Circuit Judge,
Siler,* Senior Circuit Judge,
and Howard, Circuit Judge.

Barbara S. Liftman, with whom Law Office of Barbara S. Liftman
was on brief, for appellant.
Shaun B. Spencer, with whom Law Office of Shaun Spencer, P.C.,
Janet Fennell, and Law Office of Neil Davis were on brief, for
appellee.

November 20, 2006

_____
*Of the Sixth Circuit, sitting by designation.

**SELYA**, **Circuit Judge**.  This case is a procedural motley presenting a set of curious questions about the respective roles of insurance carriers and federal courts under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461.  When all is said and done, the appeal that we must decide turns on the parties' agreeable acquiescence in the district court's assumption of the insurer's wonted role.  The tale follows.

We assume the reader's familiarity with the district court's exegetic account of the relevant background, see Forcier ex rel. Forcier v. Forcier, 406 F. Supp. 2d 132 (D. Mass. 2005), and rehearse here only those particulars that are needed to place in perspective the issues on appeal.  Because we discern no clear error in the lower court's factfinding following the bench trial it conducted, we accept the facts as found and draw all reasonable inferences therefrom in the light most favorable to the judgment. See Fed. R. Civ. P. 52(a); Janeiro v. Urological Surgery Prof'l Ass'n, 457 F.3d 130, 133 (1st Cir. 2006).

Lorraine Forcier married Donald Forcier.  Their union produced a son, Darren Forcier.  In May of 2000, Darren married Doris Betancourt (who became Doris Forcier).  The nuptials were ill-starred: the couple executed a separation agreement on July 2, 2003, and a Massachusetts probate court entered a judgment of divorce nisi on October 6, 2003.  Without any further action by either the

-2-

parties or the probate court, that judgment was to become final on January 5, 2004. See Mass. Gen. Laws ch. 208, § 21.

On October 21, 2003, Darren committed suicide (and, therefore, the divorce never became final). Darren's employer, Macromedia, Inc., was the holder of a group term life insurance policy issued by Metropolitan Life Insurance Company (MetLife). Although the policy provided him a death benefit of $208,000, Darren never designated a beneficiary.

The MetLife policy anticipated that such contingencies might occur. It provided in pertinent part:

> If there is no Beneficiary at your death for any amount of benefits payable because of your death, that amount will be paid to one or more of the following persons who are related to you and who survive you:
>
> 1. spouse; 3. parent;
> 2. child; 4. brother and sister.
>
> However, we may instead pay all or part of that amount to your estate.
>
> Any payment will discharge our liability for the amount so paid.

As the district court noted, Forcier, 406 F. Supp. 2d at 141 n.10, 146-47, this language, which confers broad discretion on the insurer in making certain benefit determinations, loosely tracks what the industry has denominated a "facility of payment" clause. Whether or not that terminology is a precise fit, we use it here.

Lorraine obtained letters of administration from the local probate court. Acting as administrator of Darren's estate, she

-3-

filed a claim for the policy proceeds. So did Doris, acting to her own behoof. MetLife made no disbursements but, rather, deferred determination of these competing claims.

In an effort to bring matters to a head, Lorraine, as administrator, sued MetLife and Doris in the probate court. Her complaint sought reformation of the policy and requested that the insurance proceeds be paid to Darren's estate. MetLife removed the action to the federal district court, premising its removal petition on the ground that Lorraine's complaint sought the recovery of benefits under, or the enforcement of rights anent, an ERISA-covered employee welfare benefit plan. See 29 U.S.C. §§ 1002(1), 1132(a)(1)(B).

Once the case took up residence in the federal court, Lorraine amended her complaint to seek a declaration that Darren's estate was entitled to the policy proceeds. Not to be outflanked, MetLife filed claims for interpleader (we say "claims" in the plural because this filing entailed both a counterclaim against Lorraine and a cross-claim against Doris). Without objection from Doris, the district court granted the interpleader claims, permitted MetLife to deposit the policy proceeds in the registry of the court, awarded MetLife its fees and costs, and dismissed it from the proceedings. That left Lorraine and Doris as the sole protagonists. Doris then filed a counterclaim for a declaration of rights.

-4-

Following the submission of briefs, the district court presided over a bench trial upon stipulated facts. In due season, the court ruled in a lengthy rescript that the insurance proceeds should be distributed to the decedent's parents, individually. Forcier, 406 F. Supp. 2d at 148-50. Doris then prosecuted this timely appeal.

The starting point for appellate review is the odd posture of the case. In connection with the group policy here at issue, MetLife effectively served as both plan administrator and insurer.[1] Nevertheless, it defaulted on its obligation to make the initial benefits determination. Instead, it sought interpleader — a course that shifted the onus of decisionmaking to the district court.

The Civil Rules allow for interpleader relief when a party "is or may be exposed to double or multiple liability." Fed. R. Civ. P. 22. Under that provision:

> Where a party in control of contested property, the stakeholder, makes no claim on the property and is willing to release it to the rightful claimant, interpleader allows him to put the money or other property in dispute into court, withdraw from the proceeding, and leave the claimants to litigate between themselves the ownership of the fund in court.

---

[1]Although the policy designated the policyholder (Macromedia) as the plan administrator, the district court found that MetLife administered all claims and that "all discretionary acts and omissions relevant to this action were assigned to, or made by, MetLife." Forcier, 406 F. Supp. 2d at 137 n.2. The parties have not disputed this finding.

<u>Comm'l Union Ins. Co.</u> v. <u>United States</u>, 999 F.2d 581, 583 (D.C. Cir. 1993) (citation and internal quotation marks omitted); <u>see also</u> 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1714 (3d ed. 2001).

Numerous courts have approved the use of Rule 22 interpleader in cases involving competing claims of entitlement to ERISA benefits.[2] <u>See</u>, <u>e.g.</u>, <u>Met. Life Ins. Co.</u> v. <u>Bigelow</u>, 283 F.3d 436, 439-40 (2d Cir. 2002); <u>Aetna Life Ins. Co.</u> v. <u>Bayona</u>, 223 F.3d 1030, 1034 (9th Cir. 2000); <u>Met. Life Ins. Co.</u> v. <u>Marsh</u>, 119 F.3d 415, 418 (6th Cir. 1997); <u>see</u> <u>also</u> <u>Fox Valley & Vicinity Constr. Workers Pension Fund</u> v. <u>Brown</u>, 879 F.2d 249, 250 (7th Cir. 1989) (approving use of statutory interpleader for such a purpose). Here, however, MetLife had available to it a perfectly acceptable route — payment to the estate — which seemingly, given the plain tenor of the policy language, would have shielded it from liability. For whatever reason, it eschewed the use of that reserved power and chose instead to burden the district court. It is, therefore, entirely possible that, had there been a timely objection, the court might have found interpleader improper and directed that the case be returned to MetLife for an initial

---

[2]It is clear that Rule 22, and not statutory interpleader, governs MetLife's application. Statutory interpleader in this case would require that the claimants be of diverse citizenship. <u>See</u> 28 U.S.C. § 1335. Since both Lorraine and Doris were citizens of Massachusetts when MetLife initiated the interpleader claims, the statute is inapposite.

benefits determination.  See, e.g., Life Ins. Co. of N. Am. v. Nears, 926 F. Supp. 86, 89 (W.D. La. 1996) (holding to that effect on similar facts).[3]

But we need not indulge in such conjecture because neither Lorraine nor Doris interposed an objection either to MetLife's request for interpleader or to its subsequent dismissal from the action.  Even now, the parties are quarreling only over the district court's ultimate allocation of the policy proceeds, not the propriety of the district court's order allowing interpleader.  These serial failures to object constitute a waiver of any and all defects in the interpleader process.  See, e.g., United States v. Sutton, 970 F.2d 1001, 1006 (1st Cir. 1992) (admonishing that "[w]hen a trial judge announces a proposed course of action which a party believes to be erroneous, that party must act expeditiously to call the perceived error to the judge's attention" on pain of being held to "a waiver as to the court's use of the [subject] procedure"); see also United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

---

[3]Due to the unique circumstances of this case, we need not decide whether, on a going-forward basis, we will look with favor upon interpleader actions brought by insurers who, in the last analysis, are seeking to shift their responsibilities to the district court without any clear demonstration of a need for interpleader relief.  Cf. Travelers Indem. Co. v. Israel, 354 F.2d 488, 490 (2d Cir. 1965) ("We are not impressed with the notion that whenever a minor problem arises in the payment of insurance policies, insurers may, as a matter of course, transfer a part of their ordinary cost of doing business . . . by bringing an action for interpleader.").

This waiver is of decretory significance here. It means, in effect, that the parties are deemed to have assented to MetLife's departure from the scene. It also means that the parties have forgone any challenge to the district court's assumption of the role of initial decisionmaker with respect to distribution of the policy proceeds (a role that the policy assigned to MetLife, as the de facto plan administrator).

We next address the nature and scope of the unaccustomed role that the parties asked the district court to play. The key question is whether, once MetLife bailed out of the proceedings without having made an initial benefits determination, the district court assumed the same discretion in the allocation of benefits that the policy conferred upon the insurer.

The district court thought that it had. The court noted that it was being asked to "step into the shoes of the insurer" and, "for better or worse, render the decision." Forcier, 406 F. Supp. 2d at 141-42. At no point in the proceedings below did either side contradict this assessment or suggest that the court possessed any less discretion than the policy ceded to MetLife. That, too, was a waiver.

As said, Doris is the appellant in this venue. In her reply brief on appeal, she argues for the first time that "[w]hile MetLife may have reserved to itself discretion to determine the proper beneficiary, the fact remains that MetLife chose not to

exercise this discretion. The District Court does not step into the shoes of MetLife and exercise that discretion just as MetLife might have." Appellant's Reply Br. at 2-3. This about-face comes too late in the day. We have held, with a regularity bordering on the echolalic, that "issues advanced for the first time in an appellant's reply brief are deemed by the boards." Cipes v. Mikasa, Inc., 439 F.3d 52, 55 (1st Cir. 2006) (collecting cases); see Sandstrom v. ChemLawn Corp., 904 F.2d 83, 86 (1st Cir. 1990) (holding that an argument "not made to the district court or in appellant's opening brief, [but] surfacing only in his reply brief" is waived). We are particularly disinclined to relax this salubrious rule on behalf of a litigant who sat silently by as the district court acknowledged that it had been anointed by the parties to "step into the shoes of the insurer." We therefore hold that, by acquiescence of the parties, the district court enjoyed the same latitude as the insurer for purposes of making the initial benefits determination.[4]

This brings us to the meat of the court's decision. Given ERISA's emphasis on the centrality of the plan documents, see, e.g., 29 U.S.C. §§ 1102(b)(4), 1104(a)(1)(D); see also Egelhoff v. Egelhoff, 532 U.S. 141, 147 (2001); Fenton v. John

---

[4]Even were we to deem Doris's belated argument forfeited rather than waived, we would find no plain error here. See Cipes, 439 F.3d at 56 (setting out the elements of plain error review).

Hancock Mut. Life Ins. Co., 400 F.3d 83, 87-89 (1st Cir. 2005), we start our substantive analysis with the text of the policy.

For present purposes, the most pertinent part of the policy is the facility of payment clause. Generally speaking, facility of payment clauses provide for "payment to a named beneficiary or to a member of a named class or, in the alternative, to any person found by the insurer to be equitably entitled." 4 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 61:14 (2005) [hereinafter Couch]; see 2A John Alan Appleman & Jean Appleman, Insurance Law and Practice § 1163 (1966) [hereinafter Appleman] (explaining that "facility of payment clauses give the insurer the option of paying to any person possessing the qualifications set forth in the clause"). Facility of payment clauses serve to protect the insurer by reserving to it wide discretion regarding the payment of policy proceeds.[5] See Appleman, supra § 1163 (explaining that, under such clauses, "payment of the policy proceeds to a person entitled thereunder absolutely discharges the insurer of all liability"); see also John Hancock Mut. Life Ins. Co. v. Jordan, 836 F. Supp. 743, 748 (D. Colo. 1993). Indeed, informed commentators have described facility of payment clauses as existing solely for the insurer's protection.

---

[5]There is some authority for the proposition that an insurer that interpleads adverse claimants and deposits all the available funds in the registry of the court forfeits the discretion formerly reserved. See Couch, supra § 61:15. Here, however, neither party contends that this sort of forfeiture occurred.

See, e.g., Couch, supra § 61:18; Appleman, supra § 1164. In all events, it is transparently clear that such clauses are not intended to give to any prospective beneficiary or other person a right to sue for the proceeds of the policy. See Jordan, 836 F. Supp. at 750; see also Couch, supra § 61:18; Appleman, supra § 1164.

Of course, the policy here at issue is part of an ERISA-regulated plan. ERISA is a statutory scheme, yet it contains no statutory guidance applicable to a case like this one. We do not find this lack of statutory guidance surprising; Congress contemplated that gaps would occur in the statutory scheme and that "a federal common law of rights and obligations under ERISA-regulated plans would develop" to fill those gaps. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 56 (1987). We turn, then, to the available precedents.

By and large, the existing case law is of limited value. Most interpleader claims brought by life insurance companies require the nisi prius court to reach legal conclusions about whether a designated beneficiary is entitled to receive benefits. Typically, the designation is challenged as incomplete, see, e.g., Phoenix Mut. Life Ins. Co. v. Adams, 30 F.3d 554, 558 (4th Cir. 1994), or outdated, see, e.g., Liberty Life Assur. Co. v. Kennedy, 358 F.3d 1295, 1297-99 (11th Cir. 2004). In such cases, courts are

usually asked to untangle and apply a welter of federal and state laws to determine who is entitled to the policy proceeds.

This case is different. The parties, by their acquiescence, cloaked the district court with the same degree of discretion that the insurer itself would have had in making a ground-level benefits determination. In effect, they asked the court to substitute its judgment for that of the insurer. Given the language of the policy, that amounted to asking the court to distribute the insurance proceeds on the basis of a discretionary choice. The question, then, is whether the district court, in making that choice, reached a permissible result.[6]

In formulating an answer to this question, we recognize that the terms of the policy, like any other provisions of an ERISA-regulated employee benefit plan, must be interpreted under principles of federal common law. See Pilot Life, 481 U.S. at 56; Filiatrault v. Comverse Tech., Inc., 275 F.3d 131, 135 (1st Cir.

---

[6]Our standard of review is debatable. Under ordinary circumstances, we review the lower court's interpretation of the language of an ERISA policy or plan de novo. See, e.g., Kennedy, 358 F.3d at 1299. Here, however, the circumstances are far from ordinary; given the discretion inherent in the facility of payment clause, a strong argument can be made that review should be for abuse of discretion. Cf. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989) (indicating that a denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is to be reviewed for abuse of discretion where the plan gives the administrator discretionary authority to determine eligibility for benefits). Since nothing turns on this distinction — we would affirm the decision below under either standard — we leave this conundrum unresolved.

2001). That body of law requires that we accord an ERISA plan's unambiguous language its plain and ordinary meaning. Balestracci v. NSTAR Elec. & Gas Corp., 449 F.3d 224, 230 (1st Cir. 2006). So too must the unambiguous language of an ERISA-regulated life insurance policy be accorded its plain and ordinary meaning. Burnham v. Guardian Life Ins. Co., 873 F.2d 486, 489 (1st Cir. 1989).

The district court interpreted what we have called the facility of payment clause as both "permissive" and "hierarchical." Forcier, 406 F. Supp. 2d at 146. It said that under the operative language "the proceeds generally (or ordinarily, or normally) will be paid to the classes of beneficiary indicated, in the order indicated, but the insurer need not do so in specific (or extraordinary, or abnormal) circumstances." Id. The court then ruled that the brevity of Darren's marriage, its imminent demise, the spouses' agreement to disentangle their financial affairs, and the balance of relevant equities warranted a deviation from the hierarchical order of priority (which would have favored Doris, as the surviving spouse). Id. at 147-49.

We are hesitant to embrace this view unreservedly. The facility of payment clause, read as a whole, makes it pellucid that MetLife contracted for an extremely free hand in deciding to whom, within the enumerated classes of persons, the policy's proceeds would be paid in the absence of a designated beneficiary. While the

clause does contain ordinal numbers, it neither specifies a preferred order of distribution nor instructs the carrier to exhaust each successive numbered category before moving on to the next numbered category. Importantly, the clause also provides that, should the insurer so elect, it may absolve itself of responsibility simply by paying the policy proceeds to the decedent's estate. That right is unconditional; it apparently can be exercised for any reason or for no reason.

The short of it is that the facility of payment clause imposes no qualifier on the insurer's discretion; rather, it puts both the policyholder and the participant on notice that, in the absence of a beneficiary designation, payment by MetLife to any member(s) of an enumerated class "will discharge [the company's] liability for the amount so paid."

This is broad leeway, but not impermissible leeway. The cases construing ERISA-regulated policies make plain that insurers can contract for varying degrees of discretion in connection with the distribution of insurance proceeds. Compare, e.g., Seaman v. Johnson, 184 F. Supp. 2d 642, 644-45 (E.D. Mich. 2002), with, e.g., Nears, 926 F. Supp. at 89. In the case at hand, the insurer obviously intended to contract for very expansive discretion. As explained above, the district court succeeded to that discretion. We find nothing in federal common law or elsewhere to suggest that,

-14-

as MetLife's surrogate, the court was somehow disqualified from taking full advantage of this discretion.

The breadth of the reserved discretion effectively resolves this appeal. The district court studied the facts, carefully balanced the equities, and made a sensible disposition based on the evidence before it. For instance, the court took account of the relatively brief duration of the marriage, its apparently irretrievable breakdown, and the terms of the separation agreement (which provides, in pertinent part, that with qualifications not relevant here, each party "waives and releases any and all [spousal] rights that he or she may now have or hereafter acquire" to take against each other's wills or to share in each other's estates). As a matter of discretion, disposition of the policy proceeds to the decedent's closest blood relatives — his parents — seems unimpugnable.[7]

In an effort to blunt the force of this reasoning, Doris advances six counter-arguments. We find none of them convincing.

First, Doris accuses the district court of going outside the record in formulating its decision. This accusation cannot withstand scrutiny. The critical facts upon which the court relied

---

[7]To be sure, in the course of its analysis the district court erroneously deferred to a "permissive hierarchy" of prospective beneficiaries. Forcier, 406 F. Supp. 2d at 146. As to Doris, however, this error was harmless; the permissive hierarchy that the court employed favored her.

were either squarely presented or plausibly inferable from the joint stipulation of facts.

Doris's second argument is equally unavailing. Implying that Darren's relationship with his parents was strained, Doris laments that she was harmed by a lack of evidence anent that relationship. Even if that lamentation is so, the blame for the dearth of evidence must be laid at her own doorstep. Decisions about what evidence to offer at trial are entirely within the parties' control. So too are decisions about whether to stipulate to facts, and if so, what topics a proposed stipulation should cover. In the absence of fraud, misrepresentation, manifest injustice, or other exceptional circumstances — not present here — a party who agrees to submit a case on a particular set of stipulated facts cannot later be heard to complain that she misjudged what evidence might be beneficial to her cause. See Varga v. Rockwell Int'l Corp., 242 F.3d 693, 699 (6th Cir. 2001); Quest Med., Inc. v. Apprill, 90 F.3d 1080, 1087 (5th Cir. 1996).

Third, Doris complains that the district court impermissibly relied on documents created and adjudicated under state law (and, in the bargain, transgressed ERISA's preemption principle). This plaint is insubstantial.

We acknowledge that ERISA "includes expansive pre-emption provisions," and that those provisions were "intended to ensure that employee benefit plan regulation would be 'exclusively a federal

concern.'" <u>Aetna Health Inc.</u> v. <u>Davila</u>, 542 U.S. 200, 208 (2004) (quoting <u>Alessi</u> v. <u>Raybestos-Manhattan, Inc.</u>, 451 U.S. 504, 523 (1981)). Here, however, the language of the plan — not state law — gave the district court broad discretion in the allocation of benefits. To aid the court in that endeavor, the parties jointly submitted the facts that they thought might bear on the question. Their stipulation included documents from the records of the local probate court. Regardless of the documents' provenance, the district court's use of them in carrying out the provisions of the plan did not violate ERISA's preemption rules. See <u>Kennedy</u>, 358 F.3d at 1300.

Fourth, Doris asserts that any payments under the policy should be made in strict accordance with the requirements of either the Federal Employees' Group Life Insurance Act, 5 U.S.C. §§ 8701-8716, or the Servicemembers' Group Life Insurance Act, 38 U.S.C. §§ 1965-1980A. That assertion is baseless. ERISA itself does not contain such an order of payment but, rather, directs that benefits be paid in accordance with the plan documents. See 29 U.S.C. § 1104(a)(1)(D). Here, as we have explained, the plan documents provide the decisionmaker with broad discretion to spray the insurance proceeds among Darren's surviving relatives and/or estate.

Fifth, Doris maintains that because Lorraine instituted this action in her representative capacity as administrator of

-17-

Darren's estate, it was improper for the district court to award the insurance proceeds to non-parties (Darren's parents, individually). The district court deemed the award of policy proceeds to non-parties allowable under Federal Rule of Civil Procedure 54(c).[8] See Forcier, 406 F. Supp. 2d at 149. On its face, that decision seems correct: after all, in this circuit Rule 54(c) "has been liberally construed, leaving no question that it is the court's duty to grant whatever relief is appropriate in the case on the facts proved." United States v. Marin, 651 F.2d 24, 31 (1st Cir. 1981) (citations and internal quotation marks omitted).

Despite the clear import of this statement, Doris posits that a federal court may not grant relief to non-parties in interpleader actions. To support that counter-intuitive proposition, she notes our observation that "[i]nterpleader actions are in personam, not in rem, and cannot resolve the rights of non-parties to anything." Met. Prop. & Cas. Ins. Co. v. Shan Trac, Inc., 324 F.3d 20, 25 (1st Cir. 2003) (citing N.Y. Life Ins. Co. v. Dunlevy, 241 U.S. 518, 521 (1916)).

Our pronouncement in Metropolitan Property provides no succor to Doris. In that case, which involved an interpleader action following a highway accident, the tortfeasor's liability

_____

[8]The rule provides in pertinent part that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." Fed. R. Civ. P. 54(c).

-18-

insurer named sixteen potential claimants and sought to divest itself of the policy proceeds through a statutory interpleader action.  Id. at 22.  Following settlement among the named parties, the district court issued a judgment providing, in relevant part, that "[a]ny other persons who have or may have claims against [the tortfeasor] arising out of the [subject] accident are hereby bound by the aforementioned split and no other persons may now or forever" make any claim against the insurer on the policy.  Id. at 25.

On appeal, an argument was made that the judgment arbitrarily "cut off" the rights of non-parties known to be involved in related state court litigation.  Id.  Because those non-parties were neither served in nor notified about the interpleader action, we vacated the judgment in part.  See id. at 25-26.  No such notice concerns are present here.  The district court's decree benefitted non-parties (Darren's parents); it did not involuntarily bind them to their detriment.  The award of the policy proceeds may, therefore, stand.[9]

Sixth, and finally, Doris contends that because the judgment does not profit the estate, Lorraine, qua administrator,

_____

[9]To the extent that Doris intends to press her allegation that Lorraine will violate her fiduciary duty as administrator should she accept all or some portion of the insurance proceeds, that issue is not yet ripe and, in all events, is for the probate court, not this court.

-19-

has no standing to urge its affirmance. This contention is meritless.

Lorraine was a party to the proceedings below. She was, therefore, entitled to file a brief on appeal in support of the district court's judgment. Moreover, even were we to strike Lorraine's brief, that action would not help Doris; an appellee's failure to file a brief does not yield an automatic judgment in the appellant's favor. See Fed. R. App. P. 31(c).

We need go no further. This is a unique case but not an insoluble one. The parties asked the district court to step into the insurer's shoes and allocate the benefits under a group life insurance policy. In the absence of a specific beneficiary designation, that policy afforded the insurer broad discretion in making such determinations; and, in the circumstances of this case, the court succeeded to the insurer's authority. The court's eventual allocation of the policy proceeds fell well within the commodious confines of this transferred discretion. Accordingly, we affirm the judgment below.

**Affirmed**.