# United States Court of Appeals
## For the First Circuit

No. 20-1591

FATEMEH MOJTABAI,

Plaintiff, Appellant,

v.

ZARY MOJTABAI; SHAPARAK MOJTABAI,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Kayatta and Barron, Circuit Judges,
and Smith,* District Judge.

Philip H. Cahalin for appellant.
Darian M. Butcher, with whom Jonathan I. Handler and Day
Pitney LLP were on brief, for appellees.

July 2, 2021

* Of the District of Rhode Island, sitting by designation.

**BARRON, Circuit Judge**. This appeal arises out of a suit that Fatemeh Mojtabai filed in the District of Massachusetts against her two sisters, Zary and Shaparak Mojtabai, in connection with the estate of all three sisters' mother. The defendants, each of whom is a New Jersey resident, were appointed as co-executors of the estate upon the 2017 death of the mother, who was herself a resident of that state. The District Court dismissed Fatemeh's complaint on the ground that it lacked personal jurisdiction over the defendants as to any of her claims and then denied her motion to set aside the judgment of dismissal. Fatemeh now appeals those rulings. We reverse in part and affirm in part.

## I.

The following facts are not in dispute. In 2005, the parties' mother, Assayesh Nasseh, and father, Jamshid Mojtabai, executed wills in New Jersey. The wills left the entirety of Assayesh's and Jamshid's respective estates to each other.

Each of the wills identified all three daughters -- Fatemeh, Shaparak, and Zary -- as equal residual beneficiaries. Assayesh's will named Jamshid as sole executor, with Zary and Shaparak as successor co-executors. In 2011, Jamshid passed away in New Jersey. Assayesh passed away in New Jersey some years later in 2017.

Following Assayesh's death, the Passaic County Surrogate's Court in New Jersey certified her will, admitted it to

probate, and formally appointed Zary and Shaparak as co-executors of the estate. In that capacity, Zary and Shaparak provided Fatemeh with a copy of a final accounting of Assayesh's estate.

This final accounting listed as assets Assayesh's New Jersey residence, a checking account, and a savings account. It also provided that Fatemeh's one-third share of the estate after expenses was $105,291.19.

On December 26, 2019, Fatemeh filed this action in the District of Massachusetts. The complaint contains two counts, each of which sets forth various claims against Zary and Shaparak.

Count One sets forth a number of state law tort claims that relate to Zary and Shaparak's actions during and after their parents' life with respect to assets that Fatemeh contends should have been part of the estate and thus included in the final accounting. The claims include breach of fiduciary duty, undue influence, conversion, and alienation of affection.

In support of these claims, the count alleges that Zary and Shaparak tortiously gained control of certain Mojtabai family assets -- namely, various real properties in Iran, as well as certain works of art, rugs, and antiques in both Iran and the United States. The count also alleges that Zary improperly holds the title to real property in Iran that is rightfully Fatemeh's,

and it seeks the return to Fatemeh of that title.[1]  Finally, the count alleges that Fatemeh suffered various hedonic damages as a result of alleged tortious actions by the defendants leading up to their final accounting.

Count Two of the complaint sets forth a number of Massachusetts law claims that relate to the discharge of a mortgage that Assayesh held on Fatemeh's Massachusetts condominium.  In support of these claims, the count alleges that Zary and Shaparak, as co-executors of the estate, are successors to the holder of a mortgage on Massachusetts real estate, that the two sisters refused to discharge the mortgage as they were required to do as the estate's co-executors, and that this failure has both clouded the title to the real property that is subject to the mortgage and prevented Fatemeh from obtaining an equity line of credit.

On March 27, 2020, Zary and Shaparak filed a motion to dismiss all the claims set forth in the complaint pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6).  The motion to dismiss argued that the claims in Count One must be dismissed for lack of personal jurisdiction, lack of subject matter jurisdiction, failure to state a claim, and pursuant to the doctrine of forum

---

[1] This property has been the subject of litigation in the Iranian courts between Fatemeh's sisters and another relative in Iran who, according to the complaint, had fraudulently taken ownership of it and other real property belonging to Jamshid and Assayesh.

- 4 -

non conveniens. The motion to dismiss asserted that the claims in Count Two must be dismissed for lack of subject matter jurisdiction.

Fatemeh filed a brief in opposition to her sisters' motion to dismiss. Fatemeh asserted in the brief in opposition that there was federal subject matter jurisdiction over the claims in both counts of the complaint and that the complaint stated claims for which relief may be granted. Fatemeh's brief in opposition did not address whether there was personal jurisdiction as to any of the claims, but it did argue that the case should not be dismissed pursuant to the doctrine of forum non conveniens.

The District Court granted Zary and Shaparak's motion to dismiss on April 13, 2020. Citing the "defendants' persuasive argument that this court lacks personal jurisdiction over Zary and Shaparak" and finding that Fatemeh failed to "me[et] th[e] challenge" to "show a prima facie case authorizing personal jurisdiction," the District Court found the "lack of personal jurisdiction . . . conclusive of the case."

The District Court went on to suggest in its ruling that the probate exception to diversity jurisdiction would deprive the court of subject matter jurisdiction "to the extent that Fatemeh is disputing the settling of her mother's estate in the New Jersey Probate Court." The District Court also suggested that it was "patently ill-suited" to resolve this dispute, given that it

involves "real estate matters being litigated in the national courts of Iran," and thus that dismissal pursuant to the doctrine of forum non conveniens might be appropriate in the event that the court did have jurisdiction.

Fatemeh filed a motion to set aside the judgment on May 11, 2020.  See Fed. R. Civ. P. 59(e).  She asserted in that motion that the District Court's dismissal of the claims in Count Two for lack of personal jurisdiction was improper because her sisters' only argument for the dismissal of those claims was based on there being a lack of subject matter jurisdiction.  She argued that her sisters had therefore waived any argument that a lack of personal jurisdiction barred the claims set forth in that count from going forward.  Fatemeh also argued that, waiver aside, it was "clear that personal jurisdiction exists in Massachusetts to litigate [her] claims in Count Two to discharge the mortgage on her Massachusetts property and recover damages."  She further contended that, in part because her sisters had waived any argument for dismissing the claims in Count Two for lack of personal jurisdiction, the claims in Count One also should not be dismissed for lack of personal jurisdiction.  Here, she argued among other things that there was "pendent personal jurisdiction" over the claims in that count because they were sufficiently related to the claims in the other count, as to which any argument that there was a lack of personal jurisdiction had been waived.

In an electronic order, the District Court denied the motion to set aside the judgment dismissing the claims in the two counts. The order denying that motion did not expressly address Fatemeh's arguments that there was personal jurisdiction over the Count Two claims or pendent personal jurisdiction over the Count One claims. The District Court instead merely concluded that it was "plain on the face of the Complaint that Count Two does not meet the jurisdictional amount prerequisite for diversity jurisdiction to attach" and thus that there could be no subject matter jurisdiction over the Count Two claims. In so ruling, however, the District Court appeared to be implicitly rejecting Fatemeh's argument for pendent personal jurisdiction over the Count One claims based on the Count Two claims, as it was holding that there was no subject matter jurisdiction over the Count Two claims and thus no anchoring claim for which there was jurisdiction.

## II.

We begin with Fatemeh's challenge to the dismissal of her Count Two claims. After setting out the relevant factual background, we turn to Fatemeh's contention that the District Court erred in ruling that there is no federal subject matter jurisdiction over these claims. As we will explain, we conclude

that Fatemeh's challenge on that score is persuasive.[2] As a result, we then move on to address her further contention that her sisters are wrong to contend that the District Court's order dismissing these claims nevertheless must be affirmed because there is a lack of personal jurisdiction as to them. Here, too, we agree with Fatemeh, even if we assume that she is wrong to contend that her sisters waived any personal-jurisdiction-based argument for dismissing these claims.

**A.**

The following facts are not in dispute. In 2010, Assayesh paid the $400,000 purchase price of a condominium unit in Weston, Massachusetts, to buy it for Fatemeh. Thereafter, Fatemeh held the title to that property.

Fatemeh subsequently granted Assayesh a mortgage on that property pursuant to a mortgage agreement between the two. The mortgage agreement did not require Fatemeh to pay back the amount that Assayesh paid to purchase the home. It did require her,

---

[2] The District Court suggested in its dismissal order that the probate exception could deprive the court of subject matter jurisdiction "to the extent that Fatemeh is disputing the settling of her mother's estate in the New Jersey Probate Court." But, the mortgage at issue in Count Two was not included in the account of estate assets, and the relief sought would not require the court to probate or annul a will, administer a decedent's estate, or "dispose of property that is in the custody of a state probate court." Marshall v. Marshall, 547 U.S. 293, 311-12 (2006). Nor does either party contend otherwise. In fact, Zary and Shaparak raised a probate exception argument only as to Count One to the District Court.

- 8 -

however, to maintain the property in good condition and to pay all expenses related to the property. The agreement further provided that if Fatemeh defaulted on these terms, Assayesh would have the right to foreclose on the property.

These terms were set forth in a written agreement that was notarized on July 1, 2010. The agreement was signed by Fatemeh in Massachusetts and by Assayesh in New Jersey. It was secured by a mortgage deed recorded in Massachusetts at the Middlesex County Registry of Deeds.

The agreement provided that the mortgage was to "automatically discharge upon Assayesh's death provided Fatemeh is not then in default" and that, to that end, the mortgage "shall contain[] language stating that it will automatically discharge upon filing of Assayesh's death certificate at the Middlesex County Registry of Deeds." The mortgage document did not in fact include that language, however.

At some point after receiving the final accounting of her mother's estate from Zary and Shaparak, Fatemeh notified the two sisters "of their obligation under Massachusetts law, [Mass. Gen. Laws ch. 183, § 55], as execut[or]s of Assayesh's estate and therefore as successors to the holder of a mortgage on Massachusetts real estate to record a discharge of the mortgage . . . within 45 days of Assayesh's death." The sisters indicated in response that they would do so only if Fatemeh

- 9 -

executed a release and waiver of formal accounting with respect to the assets owned by Assayesh in the United States at the time of her death.

Fatemeh's Count Two claims seek to compel Zary and Shaparak, as co-executors of the estate that is the successor in interest to legal title to the mortgaged condominium unit in Weston, to fulfill a purported obligation of that estate by effecting the discharge of the mortgage. The claims in that count also seek to recover payment for the defendants' failure to do so up to this point.

**B.**

The District Court found in its order denying Fatemeh's motion to set aside the judgment pursuant to Rule 59(e) that it was "plain on the face of the Complaint that Count Two does not meet the jurisdictional amount prerequisite for diversity jurisdiction to attach" under 28 U.S.C. § 1332(a)(1). That provision states that the federal "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Id.

We review a district court's denial of a Rule 59(e) motion "only for abuse of discretion," but, in doing so, we afford de novo review to issues of law. Primarque Prods. Co. v. Williams

West & Witts Prods. Co., 988 F.3d 26, 32 (1st Cir. 2021) (quoting Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005)). Because the District Court made the determination as to the amount in controversy on the pleadings without making any findings of disputed fact, the amount-in-controversy issue here is a legal one that we review de novo. See Amoche v. Guarantee Tr. Life Ins. Co., 556 F.3d 41, 48 (1st Cir. 2009); see also Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009). Fatemeh, as "the party seeking to invoke jurisdiction[,] has the burden of alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount." Dep't of Recreation & Sports v. World Boxing Ass'n, 942 F.2d 84, 88 (1st Cir. 1991).

Fatemeh does not dispute that the alleged damages for her Count Two claims might be less than $75,000. Nevertheless, she points out that she also seeks equitable relief on those claims, and she contends that the amount in controversy for them is properly "measured by the value of the object of the litigation" precisely because she seeks such equitable relief. Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 347 (1977); accord Richard C. Young & Co. v. Leventhal, 389 F.3d 1, 3 (1st Cir. 2004); 14AA Charles Alan Wright et al., Federal Practice and Procedure § 3702.5 (4th ed. 2011) ("It is well-settled . . . that the amount in controversy for jurisdiction purposes is measured by the direct

- 11 -

pecuniary value of the right that the plaintiff seeks to enforce or protect or the value of the object that is the subject matter of the suit."). She thus contends that because her complaint alleges that the mortgage creates a $400,000 lien on her property and she seeks equitable relief from that lien in the Count Two claims, she has met her burden with respect to the amount-in-controversy requirement as to those claims.

We agree. The mortgage at issue did not require Fatemeh to repay the $400,000. Zary and Shaparak also disclaim on appeal any interest in the mortgage.[3] But, neither fact is dispositive. Fatemeh has met her burden at this stage of the litigation to show that the value of the removal of the cloud on the title to this property exceeds $75,000. Accordingly, because the equitable relief that she seeks for her Count Two claims would remove that cloud on the title, she has met her burden as to the amount-in-controversy requirement.

Counsel for Zary and Shaparak did argue otherwise in part by pointing out at oral argument that Fatemeh may have a "self-help" option to discharge the mortgage: She could file the agreement and Assayesh's death certificate with the registry of deeds. The sisters' counsel argued that Fatemeh's doing so might

---

[3] Zary and Shaparak do not dispute that, as successors in interest to Assayesh, they have the ability as executors to discharge the mortgage.

make it unnecessary for her to obtain the injunctive relief that she seeks.

There is no legal certainty, however, that Fatemeh could clear the title to the Weston property at issue by taking those steps, and Zary and Shaparak's counsel conceded as much at argument. Thus, the fact that Fatemeh could take them on her own does not undermine the force of her contention that the District Court erred in dismissing these claims for lack of subject matter jurisdiction based on the amount-in-controversy requirement in 28 U.S.C. § 1332(a)(1).

## C.

Having concluded that there is no subject-matter-jurisdiction bar to the Count Two claims, we now address the separate contention by Fatemeh's sisters that there is nonetheless a personal-jurisdiction bar. We may assume that Fatemeh is wrong to contend that her sisters waived their right to contest personal jurisdiction as to these claims, because, as we will explain, reviewing de novo, Kuan Chen v. U.S. Sports Acad., Inc., 956 F.3d 45, 54 (1st Cir. 2020), the "facts set forth in the record" here are sufficient to make a prima facie showing of personal jurisdiction, Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992); see also Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998) (explaining that "[i]n conducting the requisite analysis under the prima facie standard,

- 13 -

we . . . add to the mix facts put forward by the defendants, to the extent that they are uncontradicted").[4]

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction 'is the functional equivalent of a state court sitting in the forum state.'" Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016) (quoting Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995)). Thus, the exercise of personal jurisdiction must comport with both the Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3, and the Due Process Clause of the U.S. Constitution. Id.; see also SCVNGR, Inc. v. Punchh, Inc., 85 N.E.3d 50, 52 (Mass. 2017) (explaining that "the [Massachusetts] long-arm statute imposes specific constraints on the exercise of personal jurisdiction that are not coextensive with the parameters of due process" and thus that Massachusetts courts are to begin with "a determination under the

---

[4] In its dismissal order, the District Court seems to have relied in part on the fact that Fatemeh made no argument sounding in personal jurisdiction in opposing the defendants' motion to dismiss. But, given that the defendants had not developed any argument going to personal jurisdiction over Count Two, we cannot conclude that it was incumbent on Fatemeh to do so, particularly when the allegations in her complaint and the undisputed facts in the record supported a prima facie finding of personal jurisdiction. See Mass. Sch. of L., 142 F.3d at 34; Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995) ("When a court's jurisdiction is contested, the plaintiff bears the burden of proving that jurisdiction lies in the forum state." (emphasis added)).

long-arm statute" before "consider[ing] . . . the constitutional question").  We consider each of these requirements in turn and conclude that Fatemeh has met her burden at this stage of the litigation as to each.

**1.**

The Massachusetts long-arm statute provides for jurisdiction over a person "as to a cause of action . . . arising from the person's . . . having an interest in, using or possessing real property in this commonwealth."  Mass. Gen. Laws ch. 223A, § 3(e).  The long-arm statute clearly contemplates the existence of jurisdiction over executors, see Mass. Gen. Laws ch. 223A, § 1 (defining "person" in § 3 to include a person's executor), and Massachusetts law further provides that an executor is subject to the jurisdiction of Massachusetts courts "to the same extent that the decedent was subject to jurisdiction immediately prior to death," Mass. Gen. Laws ch. 190B, § 4-302, notwithstanding that the common-law rule was otherwise, see Martel v. Stafford, 992 F.2d 1244, 1247 (1st Cir. 1993) ("[T]he Saporita exception [to the common-law rule that an executor appointed in another state is not subject to suit in Massachusetts unless a statute dictates to the contrary] confers personal jurisdiction over a foreign executor only when the testator manifests sufficient contacts with Massachusetts to support the exercise of jurisdiction . . . ." (discussing Saporita v. Litner, 358 N.E.2d 809 (Mass. 1976))).

- 15 -

Fatemeh's sisters contend that they have no interest in the real property in Massachusetts that is at issue in the Count Two claims as executors because any such interest on the part of the estate was extinguished upon Assayesh's death. That is so, they contend, because the mortgage conditions were satisfied at that point and thus the mortgage was "effectively discharged." See Maglione v. BancBoston Mortg. Corp., 557 N.E.2d 756, 757 (Mass. App. Ct. 1990) ("[U]pon payment of the note by the mortgagor or upon performance of any other obligation specified in the mortgage instrument, the mortgagee's interest in the real property comes to an end."); see also Faneuil Invs. Grp. v. Bd. of Selectmen, 933 N.E.2d 918, 922 (Mass. 2010) ("Under the title theory, legal 'title' to the mortgaged real estate remains in the mortgagee until the mortgage is satisfied or foreclosed . . . ." (quoting Restatement (Third) of Prop.: Mortgs. § 4.1 cmt. a (1997))).

This argument is not persuasive. There is little doubt that Assayesh's mortgage on Fatemeh's Massachusetts property gave Assayesh an interest in that property, as, in Massachusetts, "a mortgagee has legal title to the mortgaged real estate." Vee Jay Realty Tr. Co. v. DiCroce, 277 N.E.2d 690, 692 (Mass. 1972); see also Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 359 (1st Cir. 2013) ("In Massachusetts, a title theory state, possession of the mortgage and note undisputedly vests in the holder a real property interest."). It is also undisputed that no action has been taken

- 16 -

to effect the discharge of the mortgage and that the mortgage did not include the automatic discharge language referenced in the agreement. Thus, Fatemeh's allegations that her sisters have refused to agree to discharge the mortgage suffice to show that the Count Two claims arise from the testator's interest in Massachusetts property, such that the Massachusetts long-arm statute is satisfied with respect to those claims.

**2.**

We come, then, to the requirement that the exercise of personal jurisdiction as to the Count Two claims must comport with federal constitutional due process. Compliance with the demands of due process may be shown on the basis of either general or specific jurisdiction. The parties are in agreement, however, that there is no general personal jurisdiction over Zary or Shaparak in Massachusetts. So, the question is whether Fatemeh can meet her burden to show that there is specific personal jurisdiction over them as to the Count Two claims.

Fatemeh, as the plaintiff, bears the burden of establishing that "there is a demonstrable nexus between [her] claims and [the] defendant[s'] forum-based activities." Mass. Sch. of L., 142 F.3d at 34; see also Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007). In determining whether the constitutionally required nexus exists as to the Count Two claims, we consider (1) whether the claims "directly arise out of, or

relate to, the defendant[s'] forum-state activities"; (2) whether "the defendant[s'] in-state contacts . . . represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant[s'] involuntary presence before the state's courts foreseeable"; and (3) whether the exercise of jurisdiction is reasonable. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 60 (1st Cir. 2002) (quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 144 (1st Cir. 1995)).

We conclude that Fatemeh has met her burden as to the relatedness requirement with respect to each of the Count Two claims because the mortgage on the Massachusetts property "comprises the source and substance of, and is thus related to," the core dispute that the Count Two claims implicate. Pritzker v. Yari, 42 F.3d 53, 61 (1st Cir. 1994). We further conclude that she has also met her burden with respect to the "purposeful availment" requirement as to each of these claims, because Fatemeh's sisters purposefully availed themselves of the "privilege of conducting activities" in Massachusetts. Daynard, 290 F.3d at 60 (quoting Foster-Miller, 46 F.3d at 144).

In so concluding, we recognize that Fatemeh's sisters were appointed as executors in New Jersey and that the estate is a New Jersey-based one. But, according to the allegations in Count

Two, they accepted the appointment as to an estate that included a potential real-property interest in Massachusetts, an interest that they not only chose to maintain, through their conduct in refusing to effect the mortgage discharge, but also actively leveraged by conditioning any discharge on Fatemeh releasing them from liability as executors relating to the final accounting. These allegations, at least in combination, are sufficient to establish that the sisters acted in a manner that made their "involuntary presence before the state's courts foreseeable." Id. at 61 (quoting Foster-Miller, 46 F.3d at 144); cf. Pritzker, 42 F.3d at 62 (finding personal jurisdiction in part because the nonresident defendant had "knowingly acquir[ed] an economically beneficial interest" involving "control over property located in" the forum state).

That leaves only the reasonableness requirement to address. In connection with that requirement, we must consider

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Adelson, 510 F.3d at 51 (quoting United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992)).

The defendants' appearance in Massachusetts does not constitute the kind of "special or unusual burden" that we have found would make the first of these "gestalt" factors meaningful. See Pritzker, 42 F.3d at 64 (noting that most cases finding an unusual burden "are cases in which the defendant's center of gravity . . . was located at an appreciable distance from the forum" and concluding that "[i]n the modern era, the need to travel between New York and Puerto Rico" did not so qualify (quoting Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 210 (1st Cir. 1994))). Moreover, Fatemeh, as a resident of Massachusetts, "has an interest in bringing this action in Massachusetts, which weighs in favor of a finding of personal jurisdiction." Adelson, 510 F.3d at 51; see also Ticketmaster-N.Y., Inc., 26 F.3d at 211 (recognizing that "we must accord plaintiff's choice of forum a degree of deference in respect to the issue of its own convenience").

Nor can we discount Massachusetts's interest in this dispute, given that it concerns the legal effect of the mortgage agreement on title to Massachusetts real estate that was recorded in a Massachusetts registry of deeds. Cf. Pritzker, 42 F.3d at 64 ("Sovereigns have few interests greater than those in the conduct of forum-based litigation and the disposition of forum-based real estate."). For, although New Jersey, as the state in which the estate was admitted into probate, may have its own interests

concerning resolution of its residents' estates, the reasonableness inquiry requires that we "determine the extent to which the forum has an interest" rather than compare the strength of the forum state's interest to that of other states. Foster-Miller, 46 F.3d at 151 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 483 & n.26 (1985)). That Fatemeh is a Massachusetts resident adds to Massachusetts's interest in the case. See Adelson, 510 F.3d at 51 (noting the state's "stake in being able to provide a convenient forum for its residents to redress injuries inflicted by out-of-forum actors" (quoting Daynard, 290 F.3d at 62)).

Considerations of "the most effective resolution of the controversy" matter to the reasonableness inquiry. Adelson, 510 F.3d at 51 (quoting United Elec., Radio & Mach. Workers of Am., 960 F.2d at 1088). But, in this case, they fail to tip the constitutional balance against finding personal jurisdiction as to the Count Two claims.

There may be an argument -- similar to one that Zary and Shaparak have adverted to in connection with their separate forum non conveniens argument as to Count One -- that convenience and judicial economy favor resolving Fatemeh's many claims stemming from her sisters' administration of the New Jersey estate together in New Jersey. But, even if we were to assume that this factor does militate against Massachusetts's exercise of personal

jurisdiction over Count Two, we would not find it sufficient to conclude that such an exercise of personal jurisdiction would "offend traditional notions of 'fair play and substantial justice,'" Pritzker, 42 F.3d at 63 (quoting Burger King Corp., 471 U.S. at 476), given all the reasons described above for concluding that Massachusetts is a proper forum for this dispute.

Therefore, we find that the record supports a prima facie showing of specific personal jurisdiction over Zary and Shaparak in their capacities as co-executors as to the Count Two claims. And, as the defendants do not argue that any other basis supports the District Court's dismissal of the claims set forth in that count, we reverse its order of dismissal as to them.

**III.**

We still have left to consider Fatemeh's challenge to the dismissal of her Count One claims. As we have noted, the District Court based its dismissal of those claims on its determination that there was no personal jurisdiction as to them. Fatemeh contends that the District Court erred in so ruling, in part because there is what is known as pendent personal jurisdiction over the Count One claims.[5] She argues that there is

_____

[5] Fatemeh does seemingly assert in her reply brief that there is an independent basis for personal jurisdiction over Count One. But, she did not present such a theory to the District Court or in her opening brief on appeal. See Forcier v. Metro. Life Ins. Co., 469 F.3d 178, 183 (1st Cir. 2006) (explaining that arguments "not made to the district court or in appellant's opening brief, [but]

pendent personal jurisdiction over these claims because they share a common nucleus of operative fact with the Count Two claims and, as we have just explained, there is personal jurisdiction as to those claims.

Our Circuit has never had occasion to address whether pendent personal jurisdiction exists at all, let alone in circumstances akin to those presented here. But, we need not decide whether that doctrine does exist in some cases, because, in all the authority that Fatemeh identifies as support for recognizing its existence, the doctrine was being asserted as a basis for finding personal jurisdiction as to some claims against the same defendant for whom there was otherwise personal jurisdiction as to other claims. See 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1069.7 (3d ed. 2002); see also Fed. R. Civ. P. 4(k)(1)(A) (providing that "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district is located" (emphasis added)); Al Seraji v. Wolf, No. 19-2839, 2020 WL 7629797, at *6 (D.D.C. Dec. 22, 2020) (emphasizing

_____

surfacing only in his reply brief" are waived (alteration in original) (quoting Sandstrom v. ChemLawn Corp., 904 F.2d 83, 86 (1st Cir. 1990))). And, at oral argument, Fatemeh's counsel represented that "Count One is a pendent personal jurisdiction argument for the most part."

that the doctrine of pendent personal jurisdiction is limited to the exercise of personal jurisdiction "over . . . remaining claims against the same defendant" (emphasis added)). Yet, here, Fatemeh asks us to apply pendent personal jurisdiction over claims for which the defendants are not the same as they are for the claims for which she contends there otherwise is personal jurisdiction.

To be sure, both the Count One claims and the Count Two claims name her two sisters, Zary and Shaparak, as the defendants. But, under Massachusetts law, a person sued in her individual capacity is a different legal person than that same person sued in her capacity as executor. See Fessenden v. Gunsenhiser, 179 N.E. 603, 604 (Mass. 1932) ("The executor as a party to the cause of action in his official capacity was a distinct person from the defendant, however described, in his private capacity."); Martel, 992 F.2d at 1247 (explaining that a Massachusetts resident who would individually be subject to general personal jurisdiction in Massachusetts is not for that reason subject to personal jurisdiction in Massachusetts in his capacity as foreign executor); cf. 6 Charles Alan Wright et al., Federal Practice and Procedure § 1404 (3d ed. 2010) (explaining that in general a defendant sued in one capacity cannot counterclaim in another capacity); Goldstein v. Galvin, 719 F.3d 16, 23 (1st Cir. 2013); Dunham v. Crosby, 435 F.2d 1177, 1181 (1st Cir. 1970) (suggesting that when plaintiff sought to recover from school board members

- 24 -

individually, defendants could not assert a counterclaim that arose out of the plaintiff's alleged obligation to the board as a unit).[6]

That is significant because Fatemeh's Count One claims seek relief against Zary and Shaparak as individuals, while her Count Two claims seek relief against them only in their capacities as co-executors of the estate. After all, the request for relief in Count Two seeks injunctive relief based on a purported obligation of the estate, including an injunction to pay. Fatemeh's briefing at no point suggests that her Count Two claims are against Zary and Shaparak in their individual capacities rather than in their capacities as co-executors of the estate at issue. The request for relief in Count One, in contrast, seeks a share of property that -- according to the allegations in that count -- Zary and Shaparak own personally, as well as compensation for Zary and Shaparak's allegedly tortious conduct predating their appointment as executors.[7] Zary and Shaparak thus argued on appeal

---

[6] The traditional application of pendent personal jurisdiction arises when "one or more federal claims for which there is nationwide personal jurisdiction are combined in the same suit with one or more state or federal claims for which there is not nationwide personal jurisdiction." Action Embroidery Corp. v. Atl. Embroidery, Inc., 368 F.3d 1174, 1180-81 (9th Cir. 2004); see also IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1056-57 (2d Cir. 1993); 4B Charles Alan Wright et al., Federal Practice and Procedure § 1125 (4th ed. 2015).

[7] Count One does contain assertions that Zary and Shaparak breached their fiduciary duty and complaints about their

that the two counts seek relief from the sisters in different capacities, and nothing in Fatemeh's briefing challenges this premise or suggests that the counts are against the same legal persons. In fact, at oral argument, Fatemeh's counsel appeared to accept that the Count Two claims are brought against the sisters in their capacities as co-executors of the estate, even though the claims in Count One are brought against them in their individual capacities.

Thus, we conclude that Fatemeh's claims in Count One and Count Two -- though they both name her sisters as defendants -- are not against the same legal persons. As a result, we conclude that Fatemeh has failed to identify any authority to support her contention that the existence of personal jurisdiction over Zary and Shaparak in their representative capacities as to her Count Two claims could authorize an assertion of pendent personal jurisdiction as to her Count One claims, even assuming that pendent personal jurisdiction is allowable in some circumstances. And that is so even if we assume, as Fatemeh contends, that the claims in both counts arise from a common nucleus of operative fact. Accordingly, we reject Fatemeh's challenge to the District Court's dismissal of her Count One claims.

---

accounting of the mother's estate, but the relief sought is not based on these allegations.

**IV.**

We reverse the District Court's order of dismissal as it pertains to Count Two and remand for further proceedings consistent with this opinion.  Each party shall bear its own costs.